IN THE MATTER OF GLENN DOUGLAS FRANCE, APPELLANT.
No. 11036.
Submitted February 8, 1966. Decided March 1, 1966.
411 P.2d 732.

Berger, Anderson & Sinclair, Richard Anderson (argued), Billings, for appellant.

Paul F. Reynolds (argued), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Thirteenth Judicial District, the Honorable Charles B. Sande,

Judge presiding, denying a petition appealing from an order of the Montana Highway Patrol Board suspending petitioner's driver's license. Petitioner's license was revoked pursuant to section 31-147, subds. (a) 3 and 4, R.C.M.1947. Such section provides: *"Authority of board to suspend license or driving privilege or issue probationary license.* (a) The board is hereby authorized to suspend the license or driving privilege of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee: * * *

"3. Has been convicted with such frequency of serious offenses against traffic regulations governing the movement of vehicles as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways:

"4. Is an habitually reckless or negligent driver of a motor vehicle * * *."

Petitioner's brief lays great stress on the fact that the only evidence offered by the Montana Highway Patrol Board was the official driving record of the petitioner. The record also discloses that at the time of the hearing in the court below petitioner, who seemed so interested in his license, did not appear to testify.

This is his record:

February 16, 1952 —violating gross vehicle weight law.
April 27, 1954 —violating traffic light law.
May 16, 1954 —violating right-of-way.
July 30, 1954 —reckless driving.
December 18, 1955 —55 miles per hour in a 45 mile per hour zone.
October 2, 1956 —75 miles per hour in a 55 mile per hour zone.
November 18, 1956—80 miles per hour in a 55 mile per hour zone.
September 5, 1957 —70 miles per hour in a 55 mile per hour zone.

November 7, 1957 —70 miles per hour in a 55 mile per hour zone.

July 5, 1958 —70 miles per hour in a 55 mile per hour zone.

June 1, 1959 —95 miles per hour in a 55 mile per hour zone.

June 20, 1959 —48 miles per hour in a 35 mile per hour zone.

April 18, 1962 —35 miles per hour in a 25 mile per hour zone.

March 30, 1963 —80 miles per hour in a 55 mile per hour zone.

November 21, 1964 —50 miles per hour in a 35 mile per hour zone.

December 10, 1964 —72 miles per hour in a 55 mile per hour zone.

It should be noted that the last twelve violations are speeding violations and do not include several other traffic violations.

Almost as interesting as this record of violations are actions taken by the State Highway Patrol in trying to discipline him. After some five years of driving and nine violations appellant was sent a letter on December 16, 1957, advising him of the fact his license was in jeopardy because of his driving history. This first letter seemed to have made an imprint for some six months passed before he was caught going 70 miles per hour in a 55 mile per hour zone. However, just one year later on July 25, 1958, he received another letter of warning. As can be seen from the official report, June of 1959, was a bad month for appellant for he received two speeding violations. As a result of these violations he was interviewed by a representative of the Patrol and placed on probation for six months. This probation order was not obeyed and in December of 1959, it was necessary for the Highway Board to issue an order picking up his license for he had not voluntarily turned it in. After six months the Board returned his license in June 1960. Just six months went

by before the next letter of warning in January 1961. On April 26, 1963, he was again placed on six months probation by the Patrol Board due to his driving record with this restriction lifted on November 20, 1963. Less than a year passed before he was once more brought to the Board's attention due to his driving habits and on October 26, 1964, his license was suspended for three months. This deterrent did not bother Mr. France for less than one month, on November 21, 1964, he was again convicted of speeding. For some reason, not appearing, no mention was made of the fact he was driving without a license. Again, within 20 days after the speeding violation, he was convicted for speeding on December 10, 1964, still driving during the three months period when his license was suspended. On December 16, 1964, the Board, having before it his November driving record, suspended his license for an additional six months and when the Board met in January they added a full year suspension based not only on the December violation but the whole record. Perhaps too, in view of this record, the Board gave consideration to the general welfare of their fellow man.

As has been previously stated, petitioner said this was the only evidence submitted on the facts. What more should be needed?

In argument and brief, petitioner quite wisely abandoned the facts and asks this court to consider the law, separate and apart from the facts.

He sets forth four specifications of error.

1. The Board and the Court erred in considering the same evidence twice;

2. The Board and Court erred in considering any violations resulting in a bond forfeiture prior to July 1, 1961, as being tantamount to convictions;

3. Section 31-147 subd. (a) 4, R.C.M.1947, is unconstitutional, as an unlawful delegation of legislative authority and unenforceable as being too vague; and

4. The Board exceeded its authority in suspending appellant's driver's license for a period in excess of one year.

288

The petitioner's first specification tries to limit the Board and the Court in their review of his driving record back to his last suspension. In effect, he says, I have paid my penalty to society and once that has been done you are limited in examining my record to what has taken place after the last suspension. In brief and argument he stresses the words "punished" and "penalized" in section 31-147, subds. (a) 3 and 4. The basis for his argument is the erroneous concept of the legal reason for the driver's license suspension. The purpose and nature of the suspension is for the protection of the unsuspecting public and does not constitute "punishment" as understood within the meaning of the law. This is well put by the Idaho Supreme Court in the case of State v. Parker, 81 Idaho 51, 54, 336 P.2d 318, 320, when it said:

"The revocation of driver's license or driving privilege is not a part of the *penalty* provided for violation of the statute. The deprivation of the driving right or privilege is for the protection of the public, and is not done for the *punishment* of the individual convicted. Moreover, the revocation is not by the court in which the conviction occurs, but is by the commissioner of law enforcement, in pursuance of regulations and conditions imposed upon the exercise of the driving right or privilege, under the police·power of the state." (Emphasis supplied.)

Petitioner relies on a 1959 case from the State of Utah, McAnerney v. State Dept. of Public Safety, 9 Utah 2d 191, 341 P.2d 212, wherein that court in construing a like statute under a like set of circumstances said:

"A reading of the statute does not indicate that the legislature intended a cumulative result. We are of the opinion that the violations used in a prior determination and suspension should not again be used as the basis of a new order of suspension."

This holding of the Utah court stands alone, and we reject it for our interpretation as have a number of other states,

among which are Oregon and Pennsylvania. The Supreme Court of Oregon in 1962 in the case of Stehle v. Dept. of Motor Vehicles, 229 Or. 543, 554, 368 P.2d 386, 391, 97 A.L.R.2d 1359, interpreted a like statute as follows:

"The reinstatement of a license would not purge petitioner's record of violations up to the time of such reinstatement and it would be proper for the Department of Motor Vehicles or the court, as the case may be, upon a subsequent charge to take into account such violations along with the new violations charged in determining whether petitioner's license should be suspended or revoked. The findings in no way indicate that plaintiff's conduct prior to the reinstatement of his license was not considered in determining whether he was an habitual incompetent, reckless or negligent driver."

Such a finding supports the purpose of the statute, and protects the traveling public. We find no merit to this specification.

While not waiving the second specification, at the time of the argument, petitioner did state that most of the argument, both in the brief and orally, would be to specification four. We find no merit to petitioner's specification two, first due to its being a restatement of specification one and on the ground that the 1961 amendment did not change the substantive law. Rather, this amendment clarified the statute spelling out clearly the legislative intent as well as bringing the statute within the Uniform Motor Vehicle Code. The effect of the amendment does not make violations prior to 1961 ex post facto. Thompson v. Thompson, (N.D.1956), 78 N.W.2d 395; Durfee v. Ress, 163 Neb. 768, 81 N.W.2d 148.

Concerning specification three we disagree with petitioner's contention that the statute, section 31-147 subd. (a) 4, is an unconstitutional delegation of legislative authority in that it is too vague.

Our statute clearly sets forth the administrative procedure to be taken as a result of motor vehicle violations. The

criteria established by the legislature for the suspension of the license is reasonable, definite, certain and involves a minimum of discretion. The giving or the revocation of a license to operate a motor vehicle is within the police power of the state, and with few exceptions the cases from throughout the country show an increasing trend to sustain statutory authority and gives considerable discretion to the authorities to promote public safety.

Such recognition of the broad discretionary power of administrative boards has been recognized by this court in recent opinions. Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056; Baker Sales Barn, Inc. v. Montana Livestock Comm., 140 Mont. 1, 367 P.2d 775; Montana Milk Control Board v. Rehberg, 141 Mont. 149, 376 P.2d 508.

We find no merit in petitioner's fourth specification of error alleging that the Board exceeded its authority in that it had suspended petitioner's license for more than one year, thereby exceeding the one-year limitation of the statute. True, petitioner will not have a license to drive until June or July of 1967. With his record and the attention he pays to the highway officials' warnings, the question should be, should he ever be licensed to drive again? However, that is not the question before us, rather it is to point out that under section 31-149, R.C.M.1947, no single suspension period shall be for longer than one year. Petitioner received a three month suspension, a six month suspension, and a one year suspension as a result of three or more separate violations. All three suspensions were pursuant to section 31-147, arising out of new violations, each could have drawn the maximum of one year suspension by the Board, but they did not, an indication that discretion ran to petitioner's benefit and not to the public's.

Judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.