No. 14220

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STATE OF MONTANA, ex rel., COLONEL JOE
R. SOL, Administrator, Montana Highway Patrol,

Plaintiff and Respondent,

-vs-

JOHN WAYNE ORCUTT,

Defendant and Appellant.

Appeal from:  District Court of the Seventh Judicial District,
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

Gene Huntley argued, Baker, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Richard Simonton argued, County Attorney, Glendive, Montana
Tom Dowling argued, Helena, Montana

Submitted:  September 14, 1978

Decided: **JAN** 3 1979

Filed: **JAN** 3 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant-defendant, John Wayne Orcutt, appeals from an order of the District Court, Seventh Judicial District, Dawson County, adjudging him to be an habitual traffic offender and ordering him to surrender his license to operate a motor vehicle.

The County Attorney of Dawson County, under section 31-179, R.C.M. 1947, filed a verified complaint seeking to have John Wayne Orcutt declared an habitual traffic offender, as defined in section 31-177(1), R.C.M. 1947. The District Court issued a show cause order and Orcutt answered, asserting the complaint did not state facts sufficient to constitute a claim against him and denying both that the exhibit attached to the complaint was a copy of the certified record of his driving violations and that the certified record indicated he had accumulated more than thirty conviction points for traffic violations. Hearing on the show cause order was had September 6, 1977, and on November 15, 1977, the District Court issued an order finding Orcutt to be the person named in the complaint, finding him to be an habitual traffic offender, and ordering him to surrender immediately his driver's license.

Defendant appeals from such order and presents four issues for review:

1. Whether the defendant was entitled to a hearing before his driving privileges were suspended for three years.

2. Whether the Montana Highway Patrol had authority to suspend his driving privileges without a hearing.

3. Whether section 31-147, R.C.M. 1947, relating to suspension of driving privileges by the Montana Highway Patrol was repealed by Chapter 362, Laws of 1974 (section 31-163, et seq., R.C.M. 1947).

-2-

4. Whether the complaint to have defendant declared to be an habitual offender was invalid on its face.

The State in seeking to revoke the driver's license relies on six claimed convictions, which, under section 31-177(1), R.C.M. 1947, add up to thirty-three points calculated as follows:

Operating a motor vehicle while his license to do so was suspended or revoked

10 points (Section 31-177(1)(e),
R.C.M. 1947)  2 convictions          20 points

Speeding

3 points (Section 31-177(1)(k),
R.C.M. 1947  3 convictions           9 points

Failure to report an accident in violation of the law

4 points (Section 31-177(1)(g),
R.C.M. 1947) 1 conviction            4 points

Our consideration of the fourth issue is dispositive of the case. One of the offenses claimed against Orcutt is a conviction for failure to report an accident by the quickest means for a total of four conviction points. Under the habitual offender statute, section 31-177(g), R.C.M. 1947, it is provided:

"Willful failure of the driver involved in an accident resulting in property damage of $250 to stop at the scene of the accident and give the required information or to otherwise fail to report an accident in violation of the law, 4 points;"

The provisions of section 31-177(g), above quoted, could refer to convictions under two possible statutes. They are sections 32-1207, R.C.M. 1947, and 32-1208, R.C.M. 1947. Under section 32-1207, a driver who is involved in an accident resulting in injury to or the death of any person, or property damage to an apparent extent of $100.00 or more is required immediately by the quickest means of communication to give notice of the accident to the local police department or sheriff. Under section 32-1208, R.C.M. 1947, the driver

-3-

of a vehicle involved in an accident resulting in bodily injury to or death of any person, or total property damage to an apparent extent of $250.00 is required to give a written report of that accident to the Highway Patrol supervisor.

Orcutt's driving record, which was submitted to the District Court as exhibit one, shows an abstract of court record from a justice of peace court in Culbertson, in which the violation is recorded as "32-1207, failed to report accident quickest means". No other information is given with respect to this charge, particularly the date of the alleged charge, the place it occurred, the arresting officer, but most importantly, that there was bodily injury or death involved or that apparent property damage in the amount of $100.00 or more was incurred. Each other claim of violation is supported by a copy of a summons, but in the case of this claimed conviction, the summons is not appended and no other information appears in the record respecting this claimed violation. There is only a number reference to a summons with no other information attached.

The District Court therefore assumed, without proof before it, as we must also assume, if we feel the charge is substantiated, that the conviction under section 32-1207, involved death, injury to a person, or property damage in the amount of $100.00 or more. There is no proof thereof in the record. We hold therefore, that there was insufficient record to substantiate the conviction for failure to report an accident by the quickest means. This means a reduction of four points charged against Orcutt leaving a total of twenty-nine, and under section 31-177(1), R.C.M. 1947, thirty or more points are required before defendant can be considered an habitual offender.

-4-

One other point raised by Orcutt in his appeal is that the record which was forwarded to the court and which constitutes exhibit no. 1 is not a "certified record" as required by section 31-181, R.C.M. 1947. That section makes admissible as evidence official abstracts of the records of convictions and bond forfeiturers in the custody of the administrator, which are " . . . certified in writing by the administrator to be a correct account of the said convictions and bond forfeitures . . . ". In this case, the record forwarded by the administrator of the Highway Patrol simply recited that it was "certified". While we do not decide this case on that point, we call to the attention of the administrator that his certificate of the record should include the statement set forth in the statute that it is a correct account of the convictions and bond forfeitures.

With respect to the issue raised by Orcutt that he was not accorded a hearing by the District Court, we find that the record does indicate Orcutt was given a hearing based on the issues framed by the verified complaint and his written answer thereto. The issues with respect to the constitutionality of the driver's license suspension procedures of Montana Highway Patrol, under section 31-147, R.C.M. 1947; the authority of the Highway Patrol; and the effect of the subsequent enactment of section 31-163, R.C.M. 1947, were not framed by the pleadings below, and no other record indicates that they were considered by the District Court. Therefore, we will not consider such issues for the first time on appeal. Francis v. Heidel (1937), 104 Mont. 580, 68 P.2d 583.

The order of the District Court is reversed.

_____
Justice

-5-

We Concur:

_Gene B. Daly_

_Daniel J. Shea_
Justices

Mr. Justice John Conway Harrison dissenting:

I would affirm the judgment of the District Court. In so doing, I must discuss the issues presented and my reasons for disagreeing with the majority holding.

Issue 1. Defendant asks whether he was entitled to a hearing before his license was ordered surrendered. Most assuredly, he was so entitled. Section 31-184, R.C.M. 1947, mandates that "the [district] court shall hold a hearing upon the show cause order." Based on the hearing, the court must find that the defendant either is or is not the person named in the complaint. If the finding is that the defendant is the person so named, the court must then make a second finding, viz., whether the defendant is an habitual traffic offender as defined in section 31-177(1), R.C.M. 1947, before adjudging the defendant an habitual traffic offender, and ordering him to surrender to the court his license to operate a motor vehicle. The court has no discretion as to so adjudging and ordering; once the determinations have been made that the defendant is the person named in the complaint and that the defendant is an habitual traffic offender, the court is mandated to find and adjudge the defendant an habitual traffic offender and to order surrender of his driver's license.

Defendant himself refers us to section 31-184, R.C.M. 1947, and baldly asserts that, with respect to his hearing, the District Court did not follow the provisions therein. No support for that assertion is to be found in appellant's brief. I recognize that "the Due Process clause applies to the deprivation of a driver's license by the State", Dixon v. Love (1977), 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L Ed 2d 172, 179-80, citing Bell v. Burson (1971), 402 U.S.

-7-

539, 91 S.Ct. 1586, 29 L Ed 2d 90, and find that due process was accorded the defendant herein. As mandated by section 31-184, R.C.M. 1947, there was a hearing, held on September 6, 1977, at which defendant was present, represented by counsel. Based on that hearing, the lower court issued an order on November 15, 1977, which contains an unambiguous finding that the defendant Orcutt is the person named in the complaint, which finds and adjudges him to be an habitual traffic offender, and which orders him to surrender his driver's license. The court acted in conformity with the statutory mandates, thus according defendant due process.

Implicit in defendant's due process challenge is an objection, made in passing elsewhere in appellant's brief, that the District Court "simply ruled that the defendant was an habitual traffic offender without ever setting the matter for trial or otherwise giving the defendant an opportunity to contest the contents of the abstract of driving record which had been offered in evidence against him." Orcutt thus hints at attempting to collaterally attack the convictions which spurred the proceeding to adjudge him an habitual traffic offender. That attempt must fail because "a defendant in a[n] habitual traffic offender proceeding is not entitled to collaterally attack the validity of the convictions supporting the action by alleging the impropriety of the prior license suspension." State v. Petersen (1976), 16 Wash.App. 77, 553 P.2d 1110, 1111-12.

As did the defendant in Dixon v. Love, 431 U.S. at 113, 97 S.Ct. at 1728, 52 L Ed 2d at 181, the defendant Orcutt has had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the court's decision was based. Orcutt's driving record clearly

shows convictions, as defined in section 31-177(2), R.C.M. 1947, for driving while the privilege to do so is suspended (two), speeding (three), and failing to report an accident by the quickest means (one). All convictions were within the period of February 10, 1975, to April 11, 1977, approximately two years--a time period well within the five years during which convictions points accumulated by a licensee are counted toward habitual traffic offender status. Section 31-177(1), R.C.M. 1947. Orcutt, by virtue of his six convictions, accumulated thirty-three points, calculated as follows:

        Operating a motor vehicle while his
        license to do so was suspended, 10
        points (Section 31-177(1)(e), R.C.M.
        1947)--two convictions . . . . . . . . .20 points

        Speeding, 3 points (Section 31-177 (1)(k),
        R.C..M. 1947)--three convictions . . . . 9 points

        Failure to report an accident in viola-
        tions of the law, 4 points (Section
        31-177(1)(g), R.C.M. 1947) --one convic-
        tion . . . . . . . . . . . . . . . . . . . 4 points

Orcutt has had his day in court and may not relitigate the issue of guilt in the suspension hearing. Zaba v. Motor Vehicle Div. (Colo. 1973), 516 P.2d 634, 638.

Issue 2. Defendant challenges the authority of the Montana Highway Patrol Board to twice suspend his driving privileges, pursuant to section 31-147, R.C.M. 1947, thereby causing him to accumulate twenty points toward the designation "habitual traffic offender". Section 31-177(1)(e), R.C.M. 1947. Relying on Bell v. Burson (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L Ed 2d 90, defendant argues that due process requires that the State must afford notice and opportunity for a hearing before the termination of the privilege to drive becomes effective. Burson, which centered on a Georgia statute, the only purpose of which was to

obtain security from which to pay judgments against the licensee resulting from the accident, was distinguished in Dixon. The latter controls the disposition of the instant case, because the Montana statutes under consideration here are similar to those reviewed in Dixon and decidedly dissimilar to those subject of Burson.

The Highway Patrol Board is authorized by section 31-147, R.C.M. 1947, "to suspend the license or driving privilege of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee . . . has been convicted with such frequency of serious offenses against traffic regulations governing the movement of vehicles as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways . . ." (Emphasis added.) There is no procedural difficulty with such a provision.

As the United States Supreme Court has noted, numerous courts have sustained the suspension or revocation of driving privileges, without prior hearing, where earlier convictions were on the record. Dixon v. Love, 431 U.S. at 114-15, 97 S.Ct. at 1728, 52 L Ed 2d at 181, and cases cited therein. In the case before us, defendant's convictions were on the record. If the record on which the Highway Patrol Board relied contained a clerical error, written objection to it would have put the Board on notice to investigate and to correct the record if need be. Dixon v. Love, 431 U.S. at 113, 97 S.Ct. at 1728, 52 L Ed 2d at 180-81.

Our statutes, including section 31-147, R.C.M. 1947, like those of Illinois under consideration in Dixon, have been enacted "to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety

of others." Dixon v. Love, 431 U.S. at 115, 97 S.Ct. at 1729, 52 L Ed 2d at 181. Orcutt has demonstrated such inability or unwillingness, as evidenced by his driving record replete with convictions for offenses committed within a short period of time. The Highway Patrol Board, with an eye to protecting those unsuspecting individuals using the public thoroughfares, acted properly in suspending his privilege to drive. See In re France (1966), 147 Mont. 283, 288, 411 P.2d 732, 734.

Issue 3. Defendant claims that section 31-147, R.C.M. 1947, is unconstitutional having been impliedly repealed by the enactment of Chapter 362, 1974 Laws of Montana, codified at sections 31-175 et seq., R.C.M. 1947. This argument is advanced in the face of his own reference to section 31-189, R.C.M. 1947, which reads:

> "Nothing contained in this act shall be construed as to repeal, modify or amend any other laws or parts of laws, or any existing ordinance of any political subdivision relating to the operation or licensing of motor vehicles, the licensing of persons to operate motor vehicles or providing penalties for the violation thereof; nor shall anything in this act be construed so as to preclude the exercise of regulatory powers of any division, agency, department or political subdivision of this state or of the federal government having the statutory power to regulate the operation and licensing of motor vehicles and the licensing of motor vehicle operators."

Our obligation in construing a statute is to look at its language. If the language is clear and unambiguous, there is nothing to construe, for the statute speaks for itself. If the meaning of the statute may be discerned from the plain import of the words used, the Court may not go beyond the language and apply other means of interpretation. See, e.g., In re Estate of Baier (1977), ___ Mont. ___, 567 P.2d 943, 34 St.Rep. 860, 863 and cases cited therein.

Section 31-189, R.C.M. 1947, is clear and unambiguous. It does not repeal section 31-147, R.C.M. 1947. This determination comports with the articulated purpose of the act relating to habitual traffic offenders.

> "This act is predicated upon the belief and philosophy that innocent drivers and other innocent passengers and pedestrians have a constitutional right to live, free from fear of death or injury from habitual traffic offenders. Further, it is the purpose of this act to reduce the number of motor vehicle accidents in this state, to provide greater safety to the motoring public and others, by denying to the habitual traffic offenders the privilege of operating a motor vehicle upon the public streets and highways of this state." Section 31-175, R.C.M. 1947.

The language is strong and clear-an unequivocal right to be free of the menace posed by habitual traffic offenders is afforded all innocent users of the roadways of this state. In contrast, Orcutt, as an habitual traffic offender, does not enjoy a constitutionally guaranteed illimitable right to drive. See Zaba v. Motor Vehicle Division, 516 P.2d at 637. The enjoyment of the privilege to drive a motor vehicle depends on compliance with conditions imposed by law and always is subject to such reasonable regulation and control as the legislature sees fit to impose in the exercise of its police power in the interest of public safety and welfare. State v. Scheffel (1973), 82 Wash.2d 872, 514 P.2d 1052, 1057. Orcutt has not complied with the conditions imposed by law; his driver's license was revoked and properly so. Had he wished to avoid the operation and impact of the habitual traffic offenders act, he should have refrained from breaking the law. Scheffel, 514 P.2d at 1056.

Defendant seems to argue that by allowing section 31-147, R.C.M. 1947, to stand with sections 31-175 et seq.,

R.C.M. 1947, two entities, the Highway Patrol Bureau and the District Court, will each be meting out "punishment" for the same offense. Defendant misconstrues the nature and purpose of these statutes. We reiterate: suspension or revocation does not constitute punishment as that term is understood in law. Suspension or revocation of a driver's license is for the protection of the public. Deprivation of the privilege to drive is the penalty imposed by statute, a penalty imposed for willful failure or refusal to obey laws relating to motor vehicle traffic and imposed to protect others. In re France, 147 Mont. at 288, 411 P.2d at 734; Anderson v. Comm'r of Highways (1964), 267 Minn. 308, 126 N.W.2d 778, 783-84, 9 A.L.R.3d 746, 754. See also Barkett v. Lester (Okla. 1971), 490 P.2d 249.

It is well settled that in a civil proceeding, which that to declare an individual an habitual traffic offender is, no question of double jeopardy arises. See, e.g., One Lot Emerald Cut Stones v. United States (1972), 409 U.S. 232, 93 S.Ct. 489, 34 L Ed 2d 438. Thus, defendant's complaint that, in virtue of being adjudged an habitual traffic offender he has been made subject to double jeopardy, is without foundation. Revocation of a driver's license under the act relating to habitual traffic offenders on the basis of previous convictions for violations is not intended as punishment, as we have said, but for the protection of the public. A prior suspension is not purged from a driver's record merely by reinstatement of his license and attendant privilege to drive, and so may be considered by the District Court in a proceeding to declare a driver an habitual traffic offender. Perlmutter v. State (Colo. 1976), 554 P.2d 691, 693; Campbell v. State (Colo. 1971), 491 P.2d 1385,

1390; and In re France, 147 Mont. at 288-89, 411 P.2d at 734-35. Operating a vehicle without a license is an offense "indicative of a callous disregard of the law by an irresponsible driver", State v. Bowles (1973), 113 N.H. 571, 311 A.2d 300, 302, and is properly considered in establishing that a defendant has accumulated the requisite number of conviction points within the statutory period.

Given the avowed purpose of our statutes, defendant cannot be heard to complain that his constitutional rights have been violated.

Issue 4. In his last effort to find fault with the proceeding adjudging him to be an habitual traffic offender, defendant alleges that the complaint filed by the county attorney was invalid on its face. Orcutt claims that he should not have been assessed four points for violating section 31-177(1)(g), R.C.M. 1947, regarding failure to report an accident in violation of the law. He readily acknowledges that he was guilty of violating section 32-1207, R.C.M. 1947, requiring "[t]he driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage to an apparent extent of one hundred dollars ($100.00) or more" to "immediately by the quickest means of communication give notice of such accident" to the proper authorities. Section 31-177(1)(g), R.C.M. 1947, states that four points are to be assessed against a "driver involved in an accident resulting in property damage of $250 to stop at the scene of the accident and give the required information or to otherwise fail to report an accident in violation of the law . . ." (Emphasis added.) Even though he himself refers to the language underlined above, defendant argues that property damage resulting from an accident

must equal or exceed $250 before this statute may be applied in calculating points toward determination of the status of habitual traffic offender; that it does not appear on the record that Orcutt's violation of section 32-1207, R.C.M. 1947, was associated with an accident in which there was the requisite $250 worth of damage; that, therefore, the four points were improperly assessed against Orcutt; and, thus, that those four points should be deducted from the thirty-three point total, leaving Orcutt with twenty-nine points, too few upon which to commence proceedings to declare him an habitual traffic offender.  The argument is specious.

Orcutt is arguing, in effect, that a driver involved in a motor vehicle accident in which the property damage is determined to be within the $100 to $249 range, who violates section 32-1207, R.C.M. 1947, is exempt from the operation of the habitual traffic offenders act, section 31-177(1)(g), R.C.M. 1947.  Such an argument violates the legislative intent expressed in section 31-175, R.C.M. 1947, discussed above. Violation of section 32-1207, R.C.M. 1947, is within the ambit of the language regarding failure to report an accident in violation of the law found in section 31-177(1)(g).

For the above reasons, I would affirm the judgment of the District Court.

_____
Justice

Mr. Chief Justice Frank I. Haswell concurring:

I concur in the above dissent.

_____
Chief Justice

-15-