No. 82-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE EX REL., R. J. GRIFFITH,
Acting Chief of the Montana Highway Patrol,

Plaintiff and Appellant,

vs.

JOSEPH J. BRUSTKERN,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Sarah Power, Assistant Attorney General, argued,
Helena, Montana

For Respondent:

Morrow, Sedivy, Olson & Eck, Bozeman, Montana
Edmund P. Sedivy argued, Bozeman, Montana

Submitted: January 11, 1983

Decided: February 10, 1983

Filed: FEB 10 1983

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Montana Highway Patrol petitioned Gallatin County District Court to have Joseph Brustkern, defendant and respondent, formally declared a habitual traffic offender. The District Court refused because Brustkern only had 11 habitual offender points and a formal declaration of habitual offender requires 30 points.

We vacate the District Court judgment.

The following issues are presented for review:

1.     Whether the requirement imposed by section 61-11-211, MCA, that all habitual offender points be removed from a driver's record after revocation, applies to administrative suspensions under section 61-5-206, MCA.

2.     Whether the constitutional grounds relied on by the District Court are applicable in this case.

On May 21, 1980, plaintiff, Montana Highway Patrol Bureau suspended the defendant's driver's license for six months on the basis of the defendant's driving record. Section 61-5-206(b), MCA, allows an administrative suspension of a license if a driver has been convicted with such frequency of serious offenses as to indicate a disrespect for traffic laws and disregard for the safety of others. At the time of the May 21, 1980 suspension, the defendant had accumulated 27 habitual offender points. After the six month suspension the defendant accumulated 11 additional habitual offender points.

On June 19, 1981, the Highway Patrol, through the Gallatin County Attorney and pursuant to sections 61-11-204, 205, petitioned Gallatin County District Court to have defendant formally declared an habitual traffic offender under sections 61-11-201, et seq., MCA, which authorizes habitual offender status for any driver accumulating a total

2

of 30 points within a three-year period under the point system set out in 61-11-203(2), MCA. The Highway Patrol based its petition in District Court on the 27 points accumulated prior to the administrative suspension and the 11 points accumulated following the suspension.

After the Highway Patrol's petition was briefed and argued, the trial court ruled that the first 27 habitual offender points should have been removed from the defendant's record once they were used as a basis for the administrative suspension of the defendant's driver's license. Had that been done, the defendant's record would show only the 11 habitual offender points he accumulated after the administrative suspension. A formal declaration of habitual offender requires a total of 30 points. For that reason, the trial court refused to declare the defendant an habitual offender.

Under section 61-5-206, MCA, the Division of Motor Vehicles has the authority to suspend a driver's license for up to 12 months without a preliminary hearing if its records show that the driver has been convicted with such frequency of serious offenses against traffic regulations as to indicate a disrespect for traffic laws and a disregard for the safety of others.

Section 61-11-201, et seq., MCA, (Habitual Traffic Offender Act) provides for the revocation of the license of any driver who accumulates 30 habitual offender points. The statutes set the number of points which can be accumulated for various offenses. Section 61-11-211, MCA, of the act provides:

> "Division to revoke license of habitual offender -- method of removal of points upon revocation. Upon receipt of a court order declaring an habitual offender, the division shall revoke the driver's license or driving privilege of

3

the individual named in the order for a period of 3 years from the date of the order. Additionallly, the department shall remove from that individual's record those habitual offender points which were certified to the county attorney in the certification required by 61-11-204."

The State argues that the removal of points required by 61-11-211, MCA, applies only to revocations and not to administrative suspensions. Brustkern argues that the suspension statutes, 61-5-201, et seq., MCA, and the habitual traffic offender statutes, 61-11-201, et seq., MCA, are tied together and the statute removing the points from a driver's record should apply to both administrative suspensions and revocations under the Habitual Traffic Offenders Act.

"In construing legislation, the function of this Court is simply to ascertain and state what in terms or in substance is contained within the legislation." State ex rel. Palmer v. Hart (1982), ____Mont.____, ____P.2d____, 39 St.Rep. 2277, 2279. In reviewing 61-5-201, et seq., MCA, and 61-11-201, et seq., MCA, we find no indication that the legislature intended to apply the removal of points statute to any instance other than a revocation occurring under the habitual offender act. Section 61-11-211, MCA, provides that "upon receipt of a court order declaring an habitual offender" the department shall revoke the driver's license for three years and shall remove from the driver's record "those habitual offender points which were certified to the county attorney in the certification required by 61-11-204." A suspension under section 61-5-201, et seq., MCA, does not require either certification to the county attorney of habitual offender points or a court order. Section 61-11-211, MCA, requires removal of points only upon revocation under the Habitual Offender Act.

4

The District Court, in addition to concluding that the points were removed by 61-11-211, MCA, also concluded that "[t]o permit the plaintiff to suspend the defendant's driving privileges by repetition of various suspension statutes for the same offenses is a denial of procedural due process and is fundamentally unfair and unjust." The court, in its memorandum, stated that the removal of a license was "quasi-criminal in nature" and the use of the same points constituted "double jeopardy".

The Administrative proceeding to revoke a driver's license is a civil proceeding and not a criminal prosecution. Mills v. Bridges (1970), 93 Idaho 679, 471 P.2d 66, 69; People v. Shaver (1981), ____Colo.____, 630 P.2d 600, 604; People v. McKnight (1980), ____Colo.____, 617 P.2d 1178, 1183.

The purpose of the Habitual Traffic Offender Act:

". . . is predicated upon the belief and philosophy that innocent drivers and other innocent passengers and pedestrians have a constitutional right to live, free from fear of death or injury from habitual traffic offenders. Further, it is the purpose of this part to reduce the number of motor vehicle accidents in this state and to provide greater safety to the motoring public and others by denying to the habitual traffic offenders the privilege of operating a motor vehicle upon the public streets and highways of this state." 61-11-201, MCA.

This Court considered the same issue under a similar fact situation in In Re France, (1966), 147 Mont. 283, 411 P.2d 732.

"The petitioner's first specification tries to limit the Board and the Court in their review of his driving record back to his last suspension. In effect, he says I have paid my penalty to society and once that has been done you are limited in examining my record to what has taken place after the last suspension. In brief and argument he stresses the words 'punished' and 'penalized' in section 31-147, subds. (a) 3 and 4. The basis for his argument is the erroneous concept of the legal reason for the driver's license suspension. The purpose and nature of the suspension is for the

protection of the unsuspecting public and does not constitute 'punishment' as understood within the meaning of the law. This is well put by the Idaho Supreme Court in the case. State v. Parker, 81 Idaho 51, 54, 336 P.2d 318, 320, when it said:

"'The revocation of driver's license or driving privilege is not a part of the penalty provided for violation of the statute. The deprivation of the driving right or privilege is for the protection of the public, and is not done for the punishment of the individual convicted. Moreover, the revocation is not by the court in which the conviction occurs, but is by the commissioner of law enforcement, in pursuance of regulations and conditions imposed upon the exercise of the driving right or privilege, under the police power of the state.' (Emphasis supplied.)

"Petitioner relies on a 1959 case from the State of Utah, McAnerney v. State Dept. of Public Safety, 9 Utah 2d 191, 341 P.2d 212, wherein that court in construing a like statute under a like set of circumstances said:

"'A reading of the statute does not indicate that the legislature intended a cumulative result. We are of the opinion that the violations used in a prior determination and suspension should not again be used as the basis of a new order of suspension.'

"This holding of the Utah court stands alone, and we reject it for our interpretation as have a number of other states, among which are Oregon and Pennsylvania. The Supreme Court of Oregon in 1962 in the case of Stehle v. Dept. of Motor Vehicles, 229 Or. 543, 554, 368 P.2d 386, 391, 97 A.L.R.2d 1359, interpreted a like statute as follows:

"'The reinstatement of a license would not purge petitioner's record of violations up to the time of such reinstatement and it would be proper for the Department of Motor Vehicles or the court, as the case may be, upon a subsequent charge to take into account such violations along with the new violations charged in determining whether petitioner's license should be suspended or revoked. The findings in no way indicate that plaintiff's conduct prior to the reinstatement of his license was not considered in determining whether he was an habitual incompetent, reckless or negligent driver.'

"Such a finding supports the purpose of the statute, and protects the traveling public. We find no merit to this specification." France, 147 Mont. at 288-289, 411 P.2d at 734-35.

Brustkern relies on the McAnerney holding. As we did in France, we reject the holding in McAnerney and hold that the same traffic offense points can be used, first to suspend

a driver's license under section 61-5-201, et seq., MCA, and then, to be cumulated with additional points to reach enough points to allow for revocation of a driver's license through the habitual offender statutes. Section 61-11-211, MCA, does not apply to suspension of driver's licenses under 61-5-201, et seq., MCA. Revocation of a driver's license is a civil proceeding with the resulting loss of license not to punish the driver, but rather for the purpose of reducing the number of motor vehicle accidents and to provide greater safety to the motoring public and others by denying to the habitual traffic offenders the privilege of operating a motor vehicle upon the public streets and highways of the state.

The judgment is vacated, and the District Court is instructed to enter an order consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7