No. 84-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA, ex rel., COLONEL
LARRY G. MAJERUS, Adminstrator of
the Montana Highway Patrol,

        Plaintiff and Respondent,

-vs-

DANIEL DUANE CARTER,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighth Judicial District,
           In and for the County of Cascade,
           The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hartelius & Ferguson; Channing J. Hartelius argued,
        Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Jim Scheier argued, Asst. Atty. General, Helena
        J. Fred Bourdeau, County Attorney, Great Falls,
        Montana;  Jerry Guenther, Deputy County Attorney

---

        Submitted:   October 29, 1984

          Decided:   December 28, 1984

Filed:      1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On October 18, 1983, pursuant to the Habitual Traffic Offender Act [hereinafter the Act], the Cascade County Attorney began a civil proceeding in the Eighth Judicial District, Cascade County, to have Daniel Carter declared a habitual traffic offender. During the show cause hearing on December 9, 1983, Carter challenged the Act's constitutionality and the hearing was continued. On March 2, 1984, his constitutional claims were heard and on March 7, 1984, they were denied. On March 16, 1984, the show cause hearing reconvened and an order adjudging him a habitual traffic offender was issued on March 19, 1984. Carter appeals that order. He retained his driver's license pending this appeal.

Carter raises eight issues:

(1) Was his motion to dismiss for failure to state a claim improperly denied;

(2) Is the Act unconstitutional as a violation of due process or cruel and unusual punishment;

(3) Is the point system arbitrary and capricious or without foundation;

(4) May habitual offender points, which previously resulted in license suspension, now be used to determine a habitual offender status;

(5) Does due process require that a ticketed motorist be advised that habitual traffic offender points result from a conviction;

(6) May he be charged habitual offender points for citations of which he now claims he is innocent;

(7) Are several of the citations invalid because he was not advised of his right to counsel; and

(8) Does a District Court judge have the power to issue a probationary license?

No issue is persuasive. The judgment of the District Court is affirmed.

The facts are simple. From June 30, 1981 to May 2, 1983, Daniel Carter accumulated 31 habitual offender points for ticketed driving violations. Section 61-11-203, MCA, mandates the number of points assigned to each violation. The complaint served on Carter contained a certification of record showing his accumulated points and copies of all citations except an August 13, 1982 citation for driving while his license was suspended.

Carter raises issues relevant to criminal cases but irrelevant here. This is a civil appeal. State ex rel. Griffith v. Brustkern (Mont. 1983), 658 P.2d 410, 413, 40 St.Rep. 194, 198. While it appears that criminal due process standards were satisfied, the standards to be met are for civil, not criminal, state actions.

Carter's contention that he has the right to due process is correct. The right to due process is stated in Bell v. Burson (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90.

> "Once licenses are issued,. . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such case the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. (Citations omitted.)" 402 U.S. at 539.

The question is how much process is due. The answer is not as much as in a criminal case. "A procedural rule that may satisfy due process in one context may not necessarily

satisfy due process in every case. Thus, procedures adequate to determine a welfare claim may not suffice to try a felony charge." Bell, supra, 402 U.S. at 540.

Issue No. 1. Should the lower court have granted appellant's motion to dismiss because he had inadequate notification of the "charges" against him?

Carter contends that the omission of one citation forced him to defend charges without proper notice. This is meritless and the lower court correctly denied his motion to dismiss. State ex rel. Sol v. Orcutt (1979), 180 Mont. 15, 588 P.2d 996. He had adequate knowledge of the allegation against him. The verified complaint, on file in the District Court, contained copies of all citations, he received a copy of the Habitual Traffic Offender Certification of Record, he answered "yes" when the judge asked if he recalled the citation, and the hearing was continued from December to March during which time he received a copy of the citation. Note that, despite Carter's statement of the issue, he was not "charged" with anything.

In Orcutt, an order adjudging Orcutt a habitual offender was reversed because a justice of the peace court record of one of the traffic violations was so insufficient that the conviction could not be substantiated. In this case the record before the District Court substantiated the convictions. Attached to the complaint were eight citations for speeding, one citation for driving with a revoked license, and one citation for improper passing. The citations showed Carter either pled guilty or forfeited bond for every citation. Unlike Orcutt, there was no ambiguity regarding conviction.

Issue No. 2. Is the act unconstitutional as a violation of due process or cruel and unusual punishment?

Due Process. Carter argues that the Act denies due process because there is no provision for "post hearing." In support he cites Dixon v. Love (1977), 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172. In Dixon, the United States Supreme Court found constitutional an Illinois statute allowing the Secretary of State to make an initial summary decision, without a hearing, to revoke a driver's license based on official records, with a full hearing only available afterwards.

This argument is without merit. Apparently Carter is attempting to argue that the government cannot deprive a person of an important property interest, such as a driver's license, without providing a post-dispositional hearing. While this important constitutional issue was the issue in Dixon, the issue simply does not exist in this case. Carter had a hearing before, not after, his revocation. He was in a court before a judge, not in an administrative process and has an appeal to this Court before revocation.

Carter argues that because § 61-11-210, MCA, gives no discretion to the judge, the hearing is inadequate. This argument is meritless; the judge has discretion to determine the sufficiency of the individual's traffic offense record, thus ensuring the adequacy of the hearing. Dixon does not support this argument. Dixon prohibits an "ex parte determination that certain facts 'indicate . . . disrespect for the traffic laws,'" at 116, (concurring opinion Stevens, J.) but finds the system of "points" for various offenses "provide[s] an objective means for evaluating driving records" at 107. The difference between the point system in

Dixon and in this case is that Montana enacted the point system legislatively while Illinois' point system was developed administratively. It is well within the legislative power to define the relative seriousness of various traffic offenses.

Carter's argument that due process entitles him to attack his prior convictions in the hearing to revoke his license is not supported by law. He has already had a forum to refute those charges. He is now entitled to dispute the accuracy of the records but not the propriety of the convictions.

Cruel and Unusual Punishment. Carter argues that revoking his driver's license is cruel and unusual punishment because there is no hardship exception and because DUI offenders can receive probationary licenses.

Licensing drivers is within the police power of the state. Section 61-11-210, MCA, gives no discretion to the judge to determine who is a habitual offender or the consequences of being one but this does not create a cruel or unusual punishment. In State ex rel. Griffith v. Brustkern (Mont. 1983), 658 P.2d 410, 412, 40 St.Rep. 194, 197, this Court stated, "The purpose and nature of the suspension is for the protection of the unsuspecting public and does not constitute 'punishment' as understood within the meaning of the law."

Issue No. 3. Is the point system arbitrary, capricious and without foundation?

Finding the point system arbitrary would be substituting this Court's opinion for the legislature's in an area where the legislature clearly has the authority to enact legislation. This Court has recognized the legislature's

power to regulate driving. See, for example, Orcutt, and Brustkern. If the legislation is within the police power of the state, it is not the province of the Court to decide if the law could be better.

Issue No. 4. May traffic offender points which previously resulted in license suspension now be used to determine habitual offender status?

Carter attempts to raise double jeopardy, but the argument is irrelevant as this is not a criminal case. His argument that he is being denied a constitutional or civil right because of a prior conviction is irrelevant because a driver's license is neither a constitutional nor a civil right. Carter is entitled to due process because a license is a property interest (Bell,) not because this is a criminal proceeding or because a license is a right.

Issue No. 5. Does due process require that a ticketed motorist be advised that habitual traffic offender points result from a conviction?

A Colorado case provides some support for Carter's argument that due process mandates notice of the consequences of traffic violations. However, Colorado statute, not due process, requires the warning. A Colorado case, People v. Hampton (Colo. 1980), 619 P.2d 48, found that a warning is not required because the imposition of points does not impose punishment, revoking a driver's license is a civil action, and an appellant need not be advised of his continuing duty to act as a law-abiding citizen. This is a well-reasoned conclusion and consistent with our holding in Brustkern, supra.

Issue No. 6. Can appellant be charged habitual offender points for citations of which he now claims he is innocent?

Section 61-11-203(1), MCA, defines conviction as 1) being found guilty, 2) pleading guilty or, 3) bond forfeiture by a person charged with a motor vehicle violation. Carter contends the third definition of conviction is wrong and he should have the opportunity to collaterally attack those convictions in District Court. This Court does not agree.

While there is no Montana case stating that forfeiture of bail is equivalent to conviction other jurisdictions have so held. (Illinois, Virginia, Texas, Alabama, Iowa, Missouri, North Carolina and Georgia.) 79 A.L.R. 2d. 866. Carter had an opportunity to be heard on all convictions.

Issue No. 7. Are several of the citations invalid because appellant was not advised of right to counsel?

Carter contends that he had the right to counsel and was not advised of the right, therefore these convictions should not be considered. As support of the contention he cites Hampton, supra, which held:

> "Absent a valid waiver of the right to counsel, a conviction obtained against a defendant who is not represented by counsel may not be used to establish habitual traffic offender status for the purpose of imposing punishment for Driving After Judgment Prohibited. (Citations omitted.) This rule applies even though the prior conviction resulted from a plea of guilty and involved no actual imprisonment.. . . [T]he convictions here were punishable by a sentence to jail. Here, no incarceration was imposed; in Roybal I we assumed no incarceration was imposed. Therefore, our construction of the Driving After Judgment Prohibited statute on Roybal I to conform to the prohibition of Baldsar v. Illinois (1980), ___ U.S. ___, 100 S.Ct. 1585, 64 L.Ed.2d 169, against collateral use of uncounseled convictions applies with full force in the present case." 619 P.2d at 51-52.

There is some merit in this argument. The United States Supreme Court in Baldsar v. Illinois (1980), 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169, held that uncounseled misdemeanor convictions may not be used under an enhanced

- 8 -

penalty statute to convert a subsequent misdemeanor to a felony with a prison term. <u>Baldsar</u> and <u>Hampton</u> can be distinguished from this case because they were criminal appeals. However, the "amount" of due process should not be based on the distinction between criminal or civil or between right or privilege. The analysis should be how important is the property interest in a driver's license.

Using this analysis, this Court finds that Carter's due process rights have been satisfied. While we recognize the importance of a driver's license we find that requiring the state to inform a person of his right to counsel with every traffic violation would be an excessive burden on the state in relation to the benefit conferred on the motorist. It is not a situation where the individual is completely ignorant of his rights and obligations. To receive a license a person must become informed of Montana traffic laws and can be considered responsible for bearing the consequences.

<u>Issue No. 8</u> Does the District Court judge have the power to issue a probationary license?

The relevancy of this issue is questionable. Carter argues that section 3-5-311(1)(d), MCA, gives the judge the authority to issue licenses. Section 3-5-311(1)(d), states, "The judge of the district court may at chambers . . . (d) issue any process, make any order, and make and enter any default judgment."

Section 61-11-210, MCA, clearly attempts to limit the District Court judge's power in a court hearing for habitual offenders. Section 61-2-302, MCA, which establishes a driver's rehabilitation program for individuals who have completed one year of a three-year revocation, indicates the legislature did not intend for the judge to have discretion.

The judgment is affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
            Justices

- 10 -