No. 86-282

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

DAVID EDWARD BICK,

        Petitioner and Appellant,

   -vs-

STATE OF MONTANA DEPARTMENT OF
JUSTICE, DIVISION OF MOTOR VEHICLES,

        Respondent and Respondent.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        French, Mercer, Grainey & Duckworth; Edward K.
Duckworth, Ronan, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Kathy Seely, Asst. Atty. General, Helena, Montana

Submitted on Briefs: Sept. 25, 1986

Decided: December 30, 1986

Filed:  DEC 30 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the District Court of the Twentieth Judicial District in and for Lake County, Montana. The court affirmed a decision of the Department of Justice, Division of Motor Vehicles, suspending petitioner's driver's license. We affirm the order of the District Court.

Dave Edward Bick, appellant, received written notice from the Montana Department of Justice, Motor Vehicle Division, Driver Improvement Bureau (Bureau) that it intended to suspend his driving privileges from March 12, 1985, until September 12, 1985. Appellant could obtain a restricted probationary license if he attended a driver counseling session. The Bureau based its action on § 61-2-302, MCA, § 61-5-206, MCA, and Rule 23.3.202, Administrative Rules of Montana (ARM).

Appellant attended the driver counselling session. He then petitioned the Bureau, pursuant to § 61-5-206(3), MCA, for a hearing on its action to restrict his driving privileges, where he moved the Bureau to rescind the order of suspension or probation. He filed exceptions to the hearing examiner's proposed decision denying his motion to rescind. The final decision of the Driver Improvement Committee, however, denied the motion to rescind.

Appellant petitioned the District Court for a review of the decision. The issues were briefed by the parties and the District Court affirmed on two separate grounds: (1) the driver rehabilitation point system, Rule 23.3.202, ARM, was expressly authorized by the legislature in § 61-2-302(1), MCA, and impliedly authorized in § 61-5-206(1)(b), MCA, and (2) appellant's driving record without application of the

2

point system is sufficient evidence to support suspension of his license. This appeal followed.

We are presented with three issues:

(1) whether the Department of Justice had authority to promulgate Rule 23.3.202, ARM;

(2) whether Rule 23.3.202, ARM, is a valid administrative rule; and

(3) whether appellant's driving record without application of the point system is a proper basis for suspension of his driver's licence.

Administrative agencies enjoy only those powers specifically conferred upon them by the legislature. Bell v. Department of Licensing (1979), 182 Mont. 21, 22, 594 P.2d 331, 332. Administrative rules must be strictly confined within the applicable legislative guidelines. McPhail v. Montana Board of Psychologists (1982), 196 Mont. 514, 516, 640 P.2d 906, 907. Indeed, it is axiomatic in Montana law that a statute cannot be changed by administrative regulation. Michels v. Department of Social and Rehabilitation Services (1980), 187 Mont. 173, 178, 609 P.2d 271, 273. We look to the statutes to determine whether there is a legislative grant of authority. The District Court found Rule 23.3.202, ARM, was authorized under express authority of § 61-2-302(1), MCA, and impliedly authorized in § 61-5-206(1)(b), MCA.

Section 61-2-302(1), MCA, specifically authorizes the Department of Justice to establish by administrative rules a driver rehabilitation and improvement program.

> Establishment of driver improvement program--participation by offending drivers. (1) The department of justice may establish by administrative rules a driver rehabilitation and improvement

> program or programs which may consist of classroom instruction in rules of the road, driving techniques, defensive driving, driver attitudes and habits, actual on-the-road driver's training, and other such subjects or tasks designed to contribute to proper driving attitudes, habits, and techniques.

It is not our job to redesign the program should we find it lacking in any respect, but merely to determine whether or not the Department acted reasonably and within its delegated authority. The statute clearly grants rule making authority to the Department.

Section 61-5-206(1)(b), MCA, does not contain specific rule making authorization. It says in pertinent part:

> Authority of department to suspend license or driving privilege or issue probationary license. (1) The department is hereby authorized to suspend the license or driving privilege of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:
>
> . . .
>
> (b) has been convicted with such frequency of serious offenses against traffic regulations governing the movement of vehicles as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways;

Nonetheless, a grant of authority to suspend a person's driver's license carries with it the implication that a procedure must be established for doing so. So long as "[t]he interpretation is not plainly outside the board's authority . . . we are therefore bound by it." Douglas v. Beneficial Finance (9th Cir. 1972), 469 F.2d 453, 456, n. 2, (quoting Immigration and Naturalization Service v. Stanisic (1968), 395 U.S. 62, 72, 89 S.Ct. 1519, 1526, 23 L.Ed.2d 101, 109). We find no evidence the Department exceeded its

4

legislative grant of authority by promulgating Rule 23.3.202, ARM.

We next must examine the rule to determine its validity. The rule sets out a system which assigns a given number of points for various kinds of traffic violations. Accumulation by a driver of a certain number of points over a period of time results in suspension or revocation of his driver's license. Appellant contends the point system is out of harmony and in conflict with § 61-5-206(1), MCA, because it engrafts additional requirements. "[N]o rule adopted is valid . . . unless: (a) consistent and not in conflict with the statute; and (b) reasonably necessary to effectuate the purpose of the statute . . . " Section 2-4-305(6), MCA.

A valid rule must meet both prongs of a two-prong test to determine whether or not it harmonizes with its enabling legislation. It must not engraft additional and contradictory requirements on the statute, and it must not engraft additional non-contradictory requirements on the statute which were not contemplated by the legislature. Bell v. Department of Licensing, supra, at 23, 594 P.2d at 333. The rule also must be reasonably necessary to effectuate the purpose of the statute. Board of Barbers of the Department of Professional and Occupational Licensing v. Big Sky College (Mont. 1981), 626 P.2d 1269, 1270, 38 St.Rep. 621, 623. We do not find that the point system is either a contradictory or non-contradictory additional requirement on the statute.

> It is a "rule of thumb" adopted for the convenience of the administration of the statute in order to bring before the department for hearing those who may justifiably have their license suspended, serving as a prima facie guide when the discretion of the administering officials would be invoked. As such, it provides a

workable method for effectuating legislative purposes.

State v. Birmingham (Ariz. 1964), 390 P.2d 103, 106. "The decision to use objective rules . . . provides drivers with more precise notice of what conduct will be sanctioned and promotes equality of treatment among similarly situated drivers." Dixon v. Love (1977), 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172, 182. The point system increases the fairness of the suspension process, is consistent with the statute, and is necessary to effectuate the purpose of the statute.

Appellant also argues the District Court erred in its conclusion his driving record without application of the point system is sufficient evidence to support suspension of his license. He contends the legal conclusions were not supported by factual findings. The District Court clearly considered this argument before issuing its order:

> Although the petitioner's driving record was not specifically set forth in the findings of fact, the driving record was before the hearing examiner and the driver improvement committee and is quite sufficient to support the conclusion of law, without application of any point system, that four speeding convictions, one careless driving conviction and one improper passing conviction in a 25 month period shows a disregard for traffic laws and a disregard for the safety of other persons on the highway with such frequency of serious offenses as to support the department's suspension of petitioner's driver's license.
> This court concurs in that conclusion and affirms the final decision of the department.

The facts speak for themselves. Following the suspension of his driver's license, appellant requested and was given a hearing. His driving record was submitted by the Department as its evidence in support of the suspension of

6

his license but appellant submitted no evidence refuting the convictions or disputing his driving record. It was incumbent upon him to prove he was not convicted or that the records or computations were not correct.

In fact, after the appellant's official driving record was offered, no more was needed. In re France (1966), 147 Mont. 283, 287, 411 P.2d 732, 734. Appellant had his day in court, or in the case of bond forfeitures, his opportunity for a day in court. There were sufficient factual findings to support the court's conclusion that appellant "shows a disregard for traffic laws and a disregard for the safety of other persons on the highway with such frequency of serious offenses as to support the Department's suspension of [his] driver's license."

Appellant's license was not suspended to punish him, but for the protection of the public. State ex rel. Griffith v. Brustkern (Mont. 1983), 658 P.2d 410, 412, 40 St.Rep. 194, 197. The giving or revocation of a driver's license is within the police power of the State. In re France, supra, at 288, 411 P.2d at 734.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

7

John Conway Harrison

Justices

8