[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 417.]

COUCHOT ET AL., APPELLEES, *v.* STATE LOTTERY COMMISSION ET AL., APPELLANTS.

[Cite *as Couchot v. State Lottery Comm.*, 1996-Ohio-262.]

*Taxation—Income tax—R.C. 5747.02 as amended effective July 1, 1989 is not unconstitutional as applied to a nonresident taxpayer receiving annual payments on Ohio lottery winnings in tax years 1989 and thereafter even though taxpayer won the lottery in a year prior to 1989.*

R. C. 5747.02 as amended effective July 1, 1989, by Am.Sub.H.B. No. 111, by which an annual income tax is levied "on every individual and estate earning or receiving lottery winnings, prizes or awards," is not unconstitutional as applied to a nonresident taxpayer receiving annual payments on Ohio lottery winnings in tax years 1989 and thereafter even though the taxpayer won the lottery in a year prior to 1989.

(No. 94-1771—Submitted November 15, 1995—Decided February 7, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APE09-1337.

———————

{¶ 1} On March 2, 1988, appellee Richard L. Couchot, then a resident of Ashland, Kentucky, purchased an Ohio Super Lotto ticket in Ironton, Ohio. That evening, the six numbers appearing on Couchot's ticket were selected as the winning combination of numbers for the March 2, 1988 Super Lotto drawing. As a result, Couchot became the sole winner of the total cash prize of $21,000,000. On March 7, 1988, Couchot traveled to Columbus to redeem his winning ticket.

{¶ 2} Pursuant to former Ohio Adm.Code 3770:1-8-04(C)(3), 1987-1988 Ohio Monthly Record 1159, the prize was payable in twenty annual installments. Accordingly, on March 22, 1988, Couchot received his first check, which totaled $840,000, reflecting the first installment payment of $1,050,000 less $210,000

withholding for federal income tax purposes. In May 1988, Couchot and his wife, appellee Katharine Couchot, moved to Englewood, Florida. In March 1989, Couchot received his second check for $840,000.

{¶ 3} Effective July 1, 1989, the General Assembly enacted Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, 2330, 2615, which, among other things, amended R.C. 5747.02 to provide for an annual income tax "on every individual and estate earning or receiving lottery winnings, prizes or awards pursuant to Chapter 3770. of the Revised Code."[1]

{¶ 4} Pursuant to this amendment, the Couchots have filed joint income tax returns with the state of Ohio under protest for the tax years ending December 31, 1989 and thereafter, reflecting their Ohio lottery winnings received each year as Ohio adjusted gross income.[2]

{¶ 5} On May 2, 1990, the Couchots filed a complaint, later amended, against appellants, the State Lottery Commission, the Department of Taxation, and Mary Ellen Withrow, Treasurer, State of Ohio, challenging the imposition of Ohio income tax[3] on their lottery winnings. The complaint alleged breach of contract; a

---

1. The operative language of R.C. 5747.02 has remained unchanged through three subsequent amendments. Also, Am.Sub.H.B. No. 111 amended R.C. 5747.01(C) to include "lottery winnings, prizes, and awards" within the definition of "nonbusiness income." 143 Ohio Laws, Part II, 2613. Additionally, Am.Sub.H.B. No. 111 enacted R.C. 5747.062, *id.* at 2621, effective January 1, 1990, to require the state lottery commission to deduct and withhold three and one-half percent of each lottery prize award payment that exceeds $5,000. See, also, R.C. 3770.072.

There was some argument below concerning whether Am.Sub.H.B. No. 111 "changed" or "clarified" existing law. It was appellants' contention that prior to the enactment of Am.Sub.H.B. No. 111, Ohio lottery winnings by nonresidents were subject to Ohio income tax. Appellants have since abandoned their argument in this regard. Thus, for purposes of this appeal, the court will assume that Am.Sub.H.B. No. 111 represents a change of preexisting income tax law.

2. Because R.C. 5747.062 was not effective until January 1, 1990, no amount of Ohio tax was deducted and withheld from Couchot's March 1989 check, but, on April 16, 1990, the Couchots filed a joint return for 1989 and paid $70,002.68 in Ohio income tax on the March 1989 installment.

All checks received after January 1, 1990, however, beginning with the third installment check received by Couchot in March 1990, reflected a withholding of $36,750 for Ohio income tax purposes. At the end of each taxable year for the years 1990 and thereafter, the Couchots paid the difference between what was withheld and what was owed on their respective tax returns.

3. In particular, the application of R.C. 3770.072, 5747.02 and 5747.062.

violation of the Contract Clauses of the United States and Ohio Constitutions, Section 10, Article I of the United States Constitution and Section 28, Article II of the Ohio Constitution; a violation of the prohibition against retroactive laws under Section 28, Article II of the Ohio Constitution and R.C. 1.58; and a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Due Course of Law Clause under Section 16, Article I of the Ohio Constitution.  In addition, the Couchots argued to the trial court that the tax violated the Commerce Clause, Clause 3, Section 8, Article I of the United States Constitution.

{¶ 6} The trial court overruled all of the challenges to the tax, except for finding that the tax, as applied to Couchot's March 1989 installment, "constitutes retrospective application of [amended R.C. 5747.02] and to this extent violates R.C. 1.58 and [Section 28, Article II of] the Ohio Constitution."

{¶ 7} The court of appeals reversed the trial court on the issue of retroactivity for tax years subsequent to 1989, and on the issue of due process.  The court rejected the trial court's analysis of the Commerce Clause issue, and found the issues regarding breach and impairment of contract moot.  Additionally, on appellants' cross-appeal, the court affirmed the trial court, finding that the "inclusion of the Ohio lottery prize payment received in March 1989 constituted a retroactive application of Ohio's income tax on nonresident lottery winners."

{¶ 8} The cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Vorys, Sater, Seymour & Pease, Gerald P. Ferguson, Raymond D. Anderson* and *Eric A. Pierce*, for appellees.

*Betty D. Montgomery,* Attorney General*,* and *Richard C. Farrin,* Assistant Attorney General*,* for appellant Department of Taxation.

*Betty D. Montgomery,* Attorney General, and *Andrew S. Bergman,* Assistant Attorney General, for appellant Treasurer of State.

*Betty D. Montgomery,* Attorney General, and *Nancy Rogoff,* Assistant Attorney General, for appellant State Lottery Commission.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 9} The only issues before the court are whether the relevant portions of Am.Sub.H.B. No. 111, as applied to nonresident lottery winners under the facts of this case, violate due process, interfere with interstate commerce, or constitute unlawful retroactive legislation.[4]

I

{¶ 10} The court of appeals determined that Am.Sub.H.B. No. 111, as applied in this case, violates due process because Ohio lacked a sufficient nexus with Couchot to exercise the authority to tax his lottery winnings. The court determined that while Ohio would have had the constitutional authority to tax Couchot on his lottery winnings in 1988 when he entered Ohio to redeem his lottery ticket, it cannot do so at a later time without "some new significant contact." The court of appeals reasoned that to do so would constitute retroactive application of the law. Further, the court found no contacts to exist after 1988. The court analogized the right to annual lottery payments "to the rights of an individual who purchases an annuity or earns a pension. * * * The state becomes the debtor and plaintiffs the creditors under the 'contract,'" and the "tax situs for a debt is in the domicile of the owner, the creditor."[5]

_____

4. Appellees in their brief to the court raise two propositions of law that are unrelated to these issues. These relate to the status of the law prior to the enactment of Am.Sub.H.B. No. 111 and propose that Am.Sub.H.B. No. 111 "changed" rather than "clarified" preexisting law. Since, for purposes of this appeal, we assume that Am.Sub.H.B. No. 111 represents a change of law, see fn. 1, these propositions become irrelevant as a separate issue.

{¶ 11} The question of the state's power to tax cannot be solved by freezing moments in time and transposing judicial statements of result from other cases. Such rigid and mechanical analysis cannot find a home in the Due Process Clause. The "tax situs for a debt" and, as argued by appellants, the "source of income" are not rules to be rigidly applied across the board, but are convenient ways to mark the presence or absence of state power under the circumstances of the cases from which they derive. As Justice Frankfurter so aptly explained in *Wisconsin v. J.C. Penney Co.* (1940), 311 U.S. 435, 444-445, 61 S.Ct. 246, 250, 85 L.Ed.2d 267, 270-271:

{¶ 12} "Constitutional provisions are often so glossed over with commentary that imperceptibly we tend to construe the commentary rather than the text. We cannot, however, be too often reminded that the limits on otherwise autonomous powers of the states are those in the Constitution and not verbal weapons imported into it. 'Taxable event,' 'jurisdiction to tax,' 'business situs,' 'extraterritoriality,' are all compendious ways of implying the impotence of state power because state power has nothing on which to operate. These tags are not instruments of adjudication but statements of result in applying the sole constitutional test for a case like the present one. That test is whether property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return.

---

5. This portion of the court of appeals' analysis implicitly recognizes the doctrine of *mobilia sequuntur personam* (movables follow the person) and its corollary that income from intangibles is taxable by the state of the owner's residence. Under this doctrine, income from intangible property will be levied upon a nonresident only if the intangible property is used in a business in the taxing state or has acquired a "business situs" there. This doctrine has little overall value in determining the taxing power of a state beyond the narrow circumstances to which it has been applied. See the discussion below. Accordingly, there is no need in this case to determine the status of a lottery or a lottery ticket in this regard.

**{¶ 13}** "* * * We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution but merely represent judicial generalizations exceeding the concrete circumstance which they profess to summarize."

**{¶ 14}** Little would be gained by a case-by-case review of the decisions of the United States Supreme Court in this area. As the Supreme Court candidly explained in *Miller Bros. Co. v. Maryland* (1954), 347 U.S. 340, 344-345, 74 S.Ct. 535, 538-539, 98 L.Ed. 744, 748:

"Despite the increasing frequency with which the question arises, little constructive discussion can be found in responsible commentary as to the grounds on which to rest a state's power to reach extraterritorial transactions or nonresidents with tax liabilities. Our decisions are not always clear as to the grounds on which a tax is supported, especially where more than one exists; nor are all of our pronouncements during the experimental period of this type of taxation consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law. But the course of decisions does reflect at least consistent adherence to one time-honored concept: that due process requires some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax."

**{¶ 15}** The determination of state taxing power generally involves the flexible application of several factors, such as the state's power, dominion, or control over that which it seeks to tax; the benefits, protections, and opportunities afforded by the state; and the social and governmental costs incurred by the state. In turn, these factors will play out differently depending upon the nature of the tax imposed and the activities of the taxpayer or tax-generating source. *Miller Brothers, supra; Greenough v. Tax Assessors of Newport* (1947), 331 U.S. 486, 67 S.Ct. 1400, 91 L.Ed. 1621; *Internatl. Harvester Co. v. Wisconsin Dept. of Taxation* (1944), 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373; *State Tax Comm. of Utah v.*

*Aldrich* (1942), 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358; *Graves v. Schmidlapp* (1942), 315 U.S. 657, 62 S.Ct. 870, 86 L.Ed. 1097; *Wisconsin v. J.C. Penney Co., supra; Curry v. McCanless* (1939), 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339; *New York ex rel. Whitney v. Graves* (1937), 299 U.S. 366, 57 S.Ct. 237, 81 L.Ed. 285; *Travis v. Yale & Towne Mfg. Co.* (1920), 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460; *Shaffer v. Carter* (1920), 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445. See, also, *Stark v. Comptroller of Treasury* (1989), 78 Md.App. 599, 554 A.2d 458 (income tax on lottery winnings by nonresident held constitutional under circumstances similar to the case *sub judice*); Hellerstein & Hellerstein, State Taxation (2 Ed.1992) 6-6, Section 6-03, and 20-15, Section 20.05.

{¶ 16} In the *Internatl. Harvester* case, the United States Supreme Court summarized the law by stating that "[a] state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers." *Id.*, 322 U.S. at 441-442, 64 S.Ct. at 1064, 88 L.Ed. at 1379.

{¶ 17} It is difficult to imagine a more fundamental exertion of a state's taxing power than where the state taxes income on winnings from its lottery. The income received by Couchot in this case arose by virtue of his participation in the Ohio lottery. The Ohio lottery is an event exclusively within the power, dominion, and control of Ohio. See R.C. Chapter 3770. It is operated by Ohio's State Lottery Commission and subject to Ohio regulation. The benefits, protections, and opportunities afforded by Ohio in this regard are undeniable. Only Ohio can generate, collect, and distribute the funds comprised by its lottery. Only Ohio can provide for the existence of its lottery, and only Ohio can provide for and enforce the mechanisms for its operation. Also, the maintenance of the State Lottery Commission and the vast machinery employed, both literally and figuratively, by

the state in the operation of the lottery, as well as the implementation of the rules and regulations surrounding it, are but part of the social and governmental costs incurred by Ohio in generating the income of which Couchot is the fortunate beneficiary. Certainly, the state of Ohio has given something for which it can ask return.

**{¶ 18}** Accordingly, we hold that no violation of Due Process under the United States or Ohio Constitutions occurs by virtue of the application of the relevant portions of Am.Sub.H.B. No. 111 to Couchot's Ohio lottery winnings under the facts of this case. Thus, the judgment of the court of appeals is reversed as to this issue.

II

**{¶ 19}** Appellees also contend that there is an insufficient nexus under the Commerce Clause to permit Ohio to tax Couchot's lottery winnings. The crux of their argument is that the United States Supreme Court, in *Quill Corp. v. North Dakota* (1992), 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91, recognizes a requirement of physical presence as a means to limit state burdens on interstate commerce. Thus, Ohio cannot constitutionally impose an income tax on Couchot's lottery winnings because Couchot has not been physically present in Ohio since January 1, 1989.

**{¶ 20}** As a preliminary matter, appellants argue that the Commerce Clause issue is not properly before the court because appellees failed to file a cross-appeal. However, appellees received the judgment they sought in the court of appeals. Consequently, there was nothing for them to appeal. Appeals are from judgments, not the opinions explaining them. R.C. 2505.03. Moreover, S.Ct.Prac.R. VI(2) states that an appellee shall file a brief "answering the appellant's contentions, and making any other appropriate contentions as reasons for affirmance of the order or judgment from which the appeal is taken." Similarly, R.C. 2505.22 provides that "assignments of error may be filed by an appellee who does not appeal, which

assignments shall be passed upon by a reviewing court before the final order, judgment or decree is reversed in whole or in part."

{¶ 21} Appellants rely upon *Christian Church of Ohio v. Limbach* (1990), 53 Ohio St.3d 270, 271, 560 N.E.2d 199, 200, fn. 1, as authority for the proposition that a cross-appeal is necessary. Their reliance is misplaced. In that case, the issue under discussion was abandoned by appellee on appeal to the court. On the other hand, the court has several times allowed appellees to defend judgments on the basis of issues not raised by appellant, without having to file a cross-appeal. Cf. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880, fn. 1; *Morgan v. Cincinnati* (1986), 25 Ohio St.3d 285, 290, 25 OBR 337, 341, 496 N.E.2d 468, 472-473; *Parton v. Weilnau* (1959), 169 Ohio St. 145, 171, 8 O.O.2d 134, 148, 158 N.E.2d 719, 730.

{¶ 22} While proposition of law four in appellees' brief was not designated as being presented pursuant to R.C. 2505.22, an argument relative to the Commerce Clause was put forth. Thus, we find the Commerce Clause issue to be properly before the court and therefore proceed to the merits.

{¶ 23} Appellees have not cited any authority for their implied proposition that the purchase of an Ohio lottery ticket by a nonresident constitutes interstate commerce. However, in *Champion v. Ames* (1903), 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492, at the syllabus, the United States Supreme Court held that "[l]ottery tickets are subjects of traffic among those who choose to buy and sell them and their carriage by independent carriers from one State to another is therefore interstate commerce which Congress may prohibit under its power to regulate commerce among the several states." But, see, *Francis v. United States* (1903), 188 U.S. 375, 377, 23 S.Ct. 334, 335, 47 L.Ed. 508, 510. See, also, *United States Dept. of Treasury v. Fabe* (1992), 508 U.S. 491, ___, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449, 458.

**{¶ 24}** Had appellees cited *Champion*, the argument would no doubt have been made that "the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well. [It] prohibits certain state actions that interfere with interstate commerce." *Quill Corp., supra*, 504 U.S. at 309, 112 S.Ct. at 1911, 119 L.Ed.2d at 104. Thus, Ohio cannot impose a tax upon lottery winnings in a way that unduly burdens interstate commerce.

**{¶ 25}** The argument would then have continued from the point where appellees began. The Commerce Clause operates differently upon state taxing powers than does the Due Process Clause. "[T]he 'substantial-nexus' requirement is not, like due process' 'minimum-contacts' requirement, a proxy for notice, but rather a means for limiting state burdens on interstate commerce. Accordingly, * * * a corporation may have the 'minimum contacts' with a taxing State as required by the Due Process Clause, and yet lack the 'substantial nexus' with that State as required by the Commerce Clause." *Id.*, 504 U.S. at 313, 112 S.Ct. at 1913-1914, 119 L.Ed.2d at 107. In particular, as urged by appellees, the Commerce Clause requires the physical presence of the taxpayer.

**{¶ 26}** Even if, by some strained combination of *Champion* and *Quill, supra*, it could be said that the Commerce Clause operates to limit the burdens that a state may place upon its own lottery with regard to nonresidents, it would still not operate as an impediment to Ohio's taxation of Couchot.

**{¶ 27}** The Supreme Court in *Quill* reaffirmed the physical-presence requirement as to sales and use taxes. The court pointed out that "concerning other types of taxes we have not adopted a similar bright-line, physical-presence requirement." *Id.*, 504 U.S. at 317, 112 S.Ct. at 1916, 119 L.Ed.2d at 110. There is no indication in *Quill* that the Supreme Court will extend the physical-presence requirement to cases involving taxation measured by income derived from the state. Hellerstein & Hellerstein, State Taxation, *supra*, S6-3 to S6-4, 1994 Supp. Section 6.08[1]. Thus, the physical-presence requirement of *Quill* is not applicable to the

case *sub judice*. See *Geoffrey, Inc. v. South Carolina Tax Comm.* (1993), 313 S.C. 15, 23, 437 S.E.2d 13, 18, fn. 4.

{¶ 28} Moreover, the physical presence requirement would in any event have been satisfied. Couchot played the Ohio lottery. He purchased his winning ticket in Ironton and redeemed it in Columbus. The entire income received by Couchot, albeit paid over time in installments, is directly related to his physical presence in Ohio. Under this circumstance, we perceive no requirement that physical presence and actual receipt of income correspond in time, and appellees have presented no such authority.

{¶ 29} Accordingly, we hold that the application of Am.Sub.H.B. No. 111 to Couchot's lottery winnings under the facts of this case is not violative of Clause 3, Section 8, Article I of the United States Constitution. We therefore reject appellees' contention in this regard.

### III

{¶ 30} On the issue of retroactivity, the court of appeals held as follows:

"However, redemption of the lottery ticket was a one-time act which occurred in March 1988, at which time Ohio law provided that lottery winnings of nonresidents were not subject to the Ohio income tax. Since that time, plaintiffs have had no contact of any kind with Ohio, except to receive in Kentucky the checks representing the installment payments of their 1988 lottery winnings.

"Accordingly, plaintiffs' 1988 act of redeeming the lottery ticket is not a contact permitting imposition of an income tax upon the 1990 installment payment. This constitutes retroactive application of the law by subjecting plaintiffs to the Ohio income tax based upon their 1988 act of redeeming the lottery ticket since they have had no further contact with Ohio. There is no event or transaction occurring in Ohio in 1989 or 1990 entitling Ohio to impose an income tax upon plaintiffs' 1988 lottery winnings payable in installments over twenty years. Since,

being nonresidents, plaintiffs' 1988 lottery winnings were not subject to the Ohio income tax at that time, the winnings cannot be made subject to the Ohio income tax by subsequent enactment in the absence of some new significant contact of plaintiffs with Ohio merely because the winnings are being paid in installments. Given the facts of this case, imposition of Ohio's income tax on plaintiffs would be violative of the Due Process Clause of the United States Constitution and would constitute a retroactive law in violation of the Ohio Constitution."

{¶ 31} This analysis inappropriately commingles the issue of due process and retroactivity, as well as certain aspects of the law relative to the retroactivity issue.[6]

{¶ 32} To trigger a state's taxing power over a nonresident there must be a connection between the state and what it seeks to tax, created in part by the event or transaction that generated the gain. In this case, Ohio has the power to tax Couchot's lottery winnings because of his participation in the Ohio lottery. This is the benchmark of the due process inquiry.

{¶ 33} On the other hand, the taxable event upon which R.C. Chapter 5747 levies a tax is the receipt of income. *Dery v. Lindley* (1979), 57 Ohio St.2d 5, 7, 11 O.O.3d 70, 71, 385 N.E.2d 291, 292. A state, having the power to tax by virtue of the circumstance from which the income is derived, may choose the time the income is received as the incidence and measurement of the tax. See *Chope v. Collins* (1976), 48 Ohio St.2d 297, 302-303, 2 O.O.3d 442, 445, 358 N.E.2d 573, 577; *Internatl. Harvester, supra*, 332 U.S. at 445, 64 S.Ct. at 1065, 88 L.Ed. at 1381.

---

6. It is worthwhile to note that the obfuscation that occurred by virtue of the court of appeals' commingling of the due process and retroactivity issues is a matter apart from the federal decisions which have permitted tax statutes that retroactively tax closed transactions of prior years to exist within the bounds of the Due Process Clause. See, *e.g., Welch v. Henry* (1938), 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87. See, also, *Lakengren, Inc. v. Kosydar* (1975), 44 Ohio St.2d 199, 73 O.O.2d 502, 339 N.E.2d 814 (rejecting the federal cases in this area).

**{¶ 34}** What seems to have particularly disturbed the court of appeals is the fact that the General Assembly decided to tax lottery winnings of nonresidents after Couchot had already won the lottery. However, Couchot's winning of the lottery in 1988 was not a closed transaction, wholly completed at that time. Accordingly, the application of amended R.C. 5747.02 to his subsequent receipt of installment winnings does not result in new obligations respecting transactions already completed, and, thus, no question of retroactivity is involved. See *Herrick v. Lindley* (1979), 59 Ohio St.2d 22, 25, 13 O.O.3d 13, 15, 391 N.E.2d 729, 732; *Dery, supra*, 57 Ohio St.2d at 7, 11 O.O.3d at 71, 385 N.E.2d at 292; *Chope, supra*, 48 Ohio St.2d at 301, 2 O.O.3d at 445, 358 N.E.2d at 576; *Lakengren v. Kosydar* (1975), 44 Ohio St.2d 199, 203-204, 73 O.O.2d 502, 504, 339 N.E.2d 814, 817. See, also, *Internatl. Harvester, supra*, 322 U.S. at 445, 64 S.Ct. at 1065, 88 L.Ed. at 1381.

**{¶ 35}** As regards Couchot's 1989 installment payment, since the 1989 tax year was still open when the amendment to R.C. 5747.02 by Am.Sub.H.B. No. 111 became effective, amended R.C. 5747.02 can be constitutionally applied to the lottery winnings received by Couchot in that year. *Burke Internatl. Research Corp. v. Lindley* (1979), 58 Ohio St.2d 27, 12 O.O.3d 15, 387 N.E.2d 1227.

**{¶ 36}** Accordingly, we hold that R.C. 5747.02 as amended effective July 1, 1989, by Am.Sub.H.B. No. 111, by which an annual income tax is levied "on every individual and estate earning or receiving lottery winnings, prizes or awards," is not unconstitutional as a retroactive law prohibited by Section 28, Article II of the Ohio Constitution or R.C. 1.58, as applied to a nonresident taxpayer receiving annual payments on Ohio lottery winnings in tax years 1989 and thereafter, even though the taxpayer won the lottery in a year prior to 1989. Thus, the judgment of the court of appeals is reversed as to this issue.

**{¶ 37}** In light of the foregoing, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

_____