CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
John W. Sharp and Darlene M. Sharp won $47,000,000 in the multi-state lottery game known as Lotto America. The Sharps appeal the judgment of the First Judicial District Court, Lewis and Clark County, that their annual lottery payments are subject to Montana state income tax despite their change of residence from Havre, Montana, to the State of Washington. We affirm.
We restate the issue as whether the District Court erred when it ruled the Sharps’ lottery proceeds are “income earned in Montana” within the meaning of § 15-30-105, MCA, and are subject to Montana’s state income tax.
The State of Montana is a member of the Multi-State Lottery Association (MSLA), an unincorporated government benefit association of state agencies and the District of Columbia, with central offices in Des Moines, Iowa. MSLA operates the multi-state lottery game formerly known as Lotto America. The money for all tickets purchased in the multi-state lottery is pooled. The winnings are paid from that pooled money and are administered for Montana lottery winners by the Montana Lottery Commission pursuant to § 23-7-202, *426 MCA. MSLA rules require that prizes of more than $250,000 must be paid annually in twenty equal payments.
The Sharps were Montana residents when they won the MSLA lottery in November 1991. They are to receive their winnings in twenty annual payments of $2,348,000 each. They reported the first payment of their lottery winnings on their 1991 Montana income tax form.
In August 1992, the Sharps moved to the State of Washington. They filed their 1992 Montana income tax return as part-year residents and did not report their 1992 lottery payment as Montana income because they received it after they moved to Washington.
After the Montana Department of Revenue (DOR) issued the Sharps assessments for income taxes due on their 1992 lottery payment, the Sharps filed objections to the assessments and then filed this action for declaratory judgment. They maintained that their annual lottery payments are in the nature of annuity payments and, as such, are not includable as taxable income in Montana.
The DOR moved to dismiss for failure to state a claim upon which relief can be granted. There being no dispute as to issues of fact, and with the consent of the parties, the District Court treated the motion as one for summary judgment. Noting that similar challenges to taxation of payments to nonresident lottery winners have been raised and rejected in other states, the District Court ruled that the Sharps’ 1992 and subsequent lottery winnings are taxable as income earned in Montana. The Sharps appeal.
Discussion
Did the District Court err when it ruled the Sharps’ lottery proceeds are “income earned in Montana” within the meaning of § 15-30-105, MCA, and are subject to Montana’s state income tax?
Section 15-30-105, MCA, provides that nonresidents of Montana are subject to Montana income tax based upon the ratio of income earned in Montana to total income. “Income earned in Montana” is not defined by statute.
The Sharps assert that § 15-30-105, MCA (1991), applies here. That statute provided for a tax on the income of a nonresident “at the rates specified in 15-30-103 with respect to his entire net income as herein defined from all property owned and from every business, trade, profession, or occupation carried on in this state.” It was amended in 1992 to provide for a tax on a nonresident’s “income earned in Montana.” The Sharps maintain that the purpose of the *427 1992 amendment to § 15-30-105, MCA, was to change the method of calculating the income taxes due from nonresidents, not to change the existing source of income rules in determining the base for taxation of nonresidents.
The Sharps further maintain that the applicable source of income rule is set forth at § 15-30-131(1), MCA (1991). That statute provided:
In the case of a taxpayer other than a resident of this state, adjusted gross income includes the entire amount of adjusted gross income from sources within this state but shall not include income from annuities, interest on bank deposits, interest on bonds, notes, or other interest-bearing obligations, or dividends on stock of corporations except to the extent to which the same shall be a part of income from any business, trade, profession, or occupation carried on in this state.
The statute was amended in the July 1992 special session of the Montana Legislature to read, “In the case of a taxpayer other than a resident of this state, adjusted gross income includes the entire amount of adjusted gross income as provided for in 15-30-111.” The amendment took effect for tax years beginning after December 31, 1991. Thus, it took effect before the Sharps became nonresidents of Montana.
The Sharps also cite the following Administrative Rule of Montana:
A nonresident’s income from annuities... and all other income from intangible personal property is derived from or attributable to Montana sources only to the extent earned in connection with a business, trade, profession, or occupation carried on in Montana.
Rule 42.16.1113(1), ARM. This administrative rule was last amended in 1983.
The Sharps suggest that payments on an intangible are only taxable by the domicile of the owner. They argue that their right to collect lottery payments has all the legal characteristics of intangible personal property, in that the annual payments are income from intangible contract rights and are in the nature of income from an annuity. Based upon the above now-revised statutes and the corresponding administrative rule, the Sharps argue that in order for Montana to tax their lottery payments, the payments must be found to be from a business, trade, or profession carried on in Montana. Although the DOR contends that the lottery payments are income from the Sharps’ occupation as lottery winners, the Sharps reply that they are not professional gamblers.
*428 A general statement of legislative intent as to what income is subject to state taxation in Montana is provided at § 15-30-102, MCA:
All income except what has been expressly exempted under the provisions of this chapter and income not permitted to be taxed under the constitution of this state or the constitution or laws of the United States shall be included and considered in determining the net income of the taxpayers within the provisions of this chapter.
No Montana statute or administrative rule has specifically defined lottery proceeds as income from intangible personal property or specifically exempted such winnings from state taxation. Further, when they receive their annual lottery payments, the Sharps are not receiving income from or interest on their prize; they are receiving the prize itself. Given the absence of a specific exception of Montana lottery winnings from state taxation, and the above expression of the legislature’s general intent, we conclude that support for the Sharps’ position as to the rule on taxation of lottery prizes prior to 1992 is, at best, speculative.
In Couchot v. State Lottery Comm. (1996), 74 Ohio St.3d 417, 659 N.E.2d 1225, cert. den._U.S._, 117 S.Ct. 55,136 L.Ed.2d 18, the Supreme Court of Ohio considered a challenge by nonresident lottery winners to Ohio state income tax assessments against their annual installment payments of lottery winnings. When Couchot redeemed his winning lottery ticket, Ohio law provided that lottery winnings of nonresidents were not subject to the Ohio income tax. Ohio statutes were subsequently amended to provide for taxation of lottery winnings of nonresidents. Stating that “the taxable event upon which [Ohio statute] levies a tax is the receipt of income,” the Ohio court ruled:
Couchot’s winning of the lottery in 1988 was not a closed transaction, wholly completed at that time. Accordingly, the application of [the Ohio statute as amended in 1989] to his subsequent receipt of installment winnings does not result in new obligations respecting transactions already completed, and, thus, no question of retroactivity is involved.
Couchot, 659 N.E.2d at 1231. The Ohio court ruled that taxation of Couchot’s lottery payments received after the amendment of the statute was not unconstitutionally retroactive.
We agree with the reasoning in Couchot and conclude that the statutes in effect at the time of each annual lottery payment control as to taxation of that payment. We hold that the Sharps’ 1992 *429 and subsequent lottery payments are not excluded from income under §§ 15-30-105 and -131, MCA (1991). We further hold that Rule 42.16.1113(1), ARM, does not alter that determination. The fact that the administrative rule has not been amended since the statutes were amended does not overrule the statutory amendments. In fact, the opposite is true. The legislature has removed the language which appears in the rule from the statutes themselves. In Montana, a statute cannot be changed by administrative rule. See Bick v. State, Dept. of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418, 420.
Thus, we return to the question of whether the Sharps’ annual lottery payments are “income earned in Montana” pursuant to § 15-30-105, MCA. The District Court considered four factors relevant when it determined that the Sharps’ lottery winnings were earned in Montana: the location where the ticket was purchased, the location where the ticket was redeemed, the location where the first payment was received, and the location from which subsequent payments were mailed. In this case, all of these events undisputedly occurred in Montana.
The Sharps argue that these factors are completely irrelevant to the determination of the source of their lottery winning income. This argument is based in large part on their position that Montana statutes in 1992 did not justify the use of the test of contact counting, because the statutes did not attempt to tax income from intangibles for nonresidents. We have rejected that position above. Further, as pointed out by the District Court, the decision in Couchot and the opinion of the Court of Special Appeals of Maryland in Stark v. Comptroller (Md.App. 1989), 554 A.2d 458, support a conclusion that lottery winnings are earned in the state in which they were won.
Couchot quoted the leading case of Harvester Co. v. Dept. of Taxation (1944), 322 U.S. 435, 64 S.Ct. 1060, 88 L.Ed. 1373. In Harvester, the Court affirmed the right of the State of Wisconsin to tax dividends received by out-of-state residents from corporate income derived from property located and business transacted within the state.
A state may tax such part of the income of a non-resident as is fairly attributable either to property located in the state or to events or transactions which, occurring there, are subject to state regulation and which are within the protection of the state and entitled to the numerous other benefits which it confers.
Harvester, 322 U.S. at 441-42, 64 S.Ct. at 1064. The Couchot court stated:
*430 It is difficult to imagine a more fundamental exertion of a state’s taxing power than where the state taxes income on winnings from its lottery. The income received by Couchot in this case arose by virtue of his participation in the Ohio lottery. The Ohio lottery is an event exclusively within the power, dominion, and control of Ohio.
Couchot, 659 N.E.2d at 1229. The court went on to hold that taxation of nonresidents’ lottery winnings did not violate due process.
The Sharps argue that their case is distinguishable from Couchot because the multi-state lottery is just that — a multi-state lottery. However, the DOR points out that it is the Montana Lottery, not the MSLA, which bears the obligation to pay, and does pay, the Sharps the annual payments of their lottery winnings. The Montana Lottery is part of the state government of Montana. See §§ 23-7-101 through -412, MCA. We conclude that the Montana Lottery’s participation in the multi-state lottery is inconsequential for purposes of comparing this case with Couchot.
The Couchot court also addressed the issue of whether taxation of a nonresident’s lottery winnings violated the Commerce Clause due to an insufficient nexus between the State of Ohio and the winnings. The court reaffirmed the use of a physical-presence requirement test in analyzing such an issue. Stating that “the entire income received by Couchot, albeit paid over time in installments, is directly related to his physical presence in Ohio,” the court found that the test was satisfied because Couchot purchased his winning ticket and redeemed it in Ohio. Couchot, 659 N.E.2d at 1230.
In Stark, the Court of Special Appeals of Maryland considered a case in which Stark, a resident of the State of Washington, won $1,000,000 in the Maryland lottery. In the words of the court, “He is not complaining about that. What irks him, and has led to this appeal, is the Comptroller’s attempt to tax him on $950,000 of his winnings.” Stark, 554 A.2d at 459.
Stark contended that only the first $50,000 payment on his lottery winnings was subject to Maryland income tax. He argued that his subsequent annual payments on the prize were not income from the State lottery, but were instead income from an annuity which the State of Maryland had admittedly purchased to pay lottery winners and which was administered by a corporate entity in New J ersey. The Stark court stated the issue as whether the periodic payments to Stark constituted taxable earnings from a state lottery prize. After reviewing case law including Harvester and Couchot, the court held:
*431 These cases make clear that a State may tax a nonresident not just on income earned from property in the State or a business carried on in the State but also from “events” or “transactions” occurring in the State, or from intangible property having a special ‘localization” within the State. The domicile of the recipient is not necessarily controlling.
Stark, 554 A.2d at 464. The court determined that a sufficient nexus had been established between the State of Maryland and Stark’s annual payments on his lottery winnings to validate the state’s taxation of the payments. The Stark court held that the state could tax the portion of winnings received after passage of the law authorizing taxation of State lottery winnings of nonresidents, even though those payments were made through the annuity purchased from a private corporation, because the payments were traceable to an event or transaction which occurred in Maryland. Stark, 554 A.2d at 464.
Finding Couchot and Stark persuasive, we agree with the District Court’s determination that there is a sufficient connection between the State of Montana and the annual prize money the Montana Lottery pays to the Sharps to hold that the Sharps’ lottery prize is “income earned in Montana.”
The Sharps further object to application to this case of § 15-30-246, MCA, a 1993 amendment to Montana income tax law. They assert that application of this statute to them is impermissibly retroactive and amounts to ex post facto legislation and that it violates their rights to due process. In the 1993 amendment, the Montana Legislature adopted the following statutory language:
It is the policy and intent of the legislature that lottery proceeds received by a person who redeems a ticket or chance to win a prize on a ticket or chance purchased in Montana under the provisions of Title 23, chapter 7, is Montana source income, notwithstanding the residence of the person or entity that redeems the ticket. This policy statement affirms that the legislature has always considered lottery proceeds to be Montana source income.
Section 15-30-246(1), MCA. The Sharps argue that this is a policy statement, not a tax statute, and therefore does not have the effect of law. They also point out that a legislature’s attempt to declare the intention of a previous legislature is entitled to no weight. Section 15-30-246(2), MCA, further provides that lottery payments are subject to the state withholding tax. The Sharps contend that *432 application of § 15-30-246, MCA, to their case imposes retroactive tax liability upon them and violates Montana and federal constitutional guarantees of due process and equal protection.
The DOR’s response is that the Montana income tax has always taxed the Montana Lottery winnings of nonresidents. In any event, the DOR argues that the taxable event is the receipt of income in a particular year; and, therefore, taxation of that income is not retroactive. The DOR further maintains that it is constitutional to tax some properly or activities differently from other property or activities.
The District Court found it unnecessary to apply § 15-30-246, MCA, in this case. The court instead based its ruling on the determination that the Sharps’ lottery payments are “income earned in Montana” under § 15-30-105, MCA. We conclude that we need not decide this issue, based on our conclusions above and because the District Court did not rely upon § 15-30-246, MCA, in rendering its decision.
We hold that the District Court did not err in ruling that the Sharps’ annual lottery payments are income earned in Montana from a state lottery prize. As such, they are subject to an income tax by the State of Montana. We therefore affirm the decision of the District Court.
JUSTICES HUNT, REGNIER and LEAPHART concur.