**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. FirstEnergy Corp.*, Slip Opinion No. 2024-Ohio-101.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-101

THE STATE EX REL. YOST, ATTY. GEN., APPELLANT, *v.* FIRSTENERGY CORPORATION ET AL.; RANDAZZO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Yost v. FirstEnergy Corp.*, Slip Opinion No. 2024-Ohio-101.]**

*Attachment—Ex parte orders—R.C. 2715.045—Irreparable-injury requirement—Trial court's finding that plaintiff would suffer irreparable injury without ex parte order of attachment is not appealable—Appropriate remedy for improper issuance of ex parte attachment order is a full hearing before trial court with plaintiff and defendant present—Court of appeals' judgment reversed and trial-court orders reinstated.*

(No. 2022-1286—Submitted June 28, 2023—Decided January 16, 2024.)

APPEAL from the Court of Appeals for Franklin County,
Nos. 21AP-443, 21AP-444, and 21AP-445, 2022-Ohio-3400.

_____

**DeWine, J.**

{¶ 1} Samuel Randazzo allegedly received a $4.3 million bribe from FirstEnergy Corporation. The state of Ohio filed a civil action against Randazzo and a consulting company he controls to recover the proceeds of the bribe. At about the same time it sued Randazzo, the state sought attachment orders to prevent Randazzo from draining his bank and brokerage accounts. After a hearing, the trial court granted the state's motion. It did so ex parte—that is, without notice to Randazzo and his attorneys. After learning that the court had granted the ex parte motion, Randazzo moved to vacate the orders and exercised his right to request a hearing on the orders. The court held the hearing, with both sides present, and declined to discharge the orders of attachment.

{¶ 2} Randazzo appealed to the Tenth District Court of Appeals, which found that the orders of attachment had been improperly granted. 2022-Ohio-3400, ¶ 40-41.

{¶ 3} The court of appeals determined that the state had failed to meet its burden at the ex parte hearing to establish that it would suffer an " 'irreparable injury' " should the order be delayed until Randazzo had an " 'opportunity for a hearing.' " *Id.* at ¶ 23-24, quoting R.C. 2715.045(A). The problem is that the irreparable injury showing was not appealable. Rather, the appropriate remedy for the improper issuance of an order ex parte is a full hearing before the trial court with both sides present. Because the appellate court reached its decision on an improper basis, we reverse its judgment and reinstate the orders of the trial court.

## I. BACKGROUND

{¶ 4} Randazzo is the former chairman of the Public Utilities Commission of Ohio (PUCO). He is also the sole owner of Sustainability Funding Alliance of Ohio, Inc., a consulting company (the "consulting company"). He allegedly received, through his consulting company, a $4.3 million bribe from FirstEnergy a few weeks before he began his tenure at PUCO. The state claims that this payment

was allegedly in exchange for Randazzo promising to give favorable treatment to FirstEnergy as PUCO chairman.

{¶ 5} In September 2020, the state sued FirstEnergy and multiple other defendants related to bribery and corruption. In February 2021, the litigation was stayed for pending federal criminal proceedings. A few months later, FirstEnergy entered into a deferred-prosecution agreement with the United States Attorney's Office. The deferred-prosecution agreement revealed Randazzo's role in the corruption scheme.

{¶ 6} Accordingly, the state moved to amend its complaint—which had been stayed for the federal proceedings—so that it could add Randazzo and his consulting company as defendants.[1] The trial court granted that motion.

### A. The Trial Court Grants Prejudgment Orders of Attachment

{¶ 7} At about the same time it added Randazzo as a party to its lawsuit, the state moved for an ex parte prejudgment attachment on Randazzo's bank and brokerage accounts. *See* R.C. 2715.045. An "attachment" is when a court "seize[s] * * * a person's property to secure a judgment." *Black's Law Dictionary* 157 (11th Ed.2019). A prejudgment attachment is the seizure of that property before judgment in a case.

{¶ 8} In support of its motion for attachment, the state claimed that there was probable cause that it would obtain a money judgment against Randazzo. It pointed to the FBI's raid of Randazzo's home in late 2020 (shortly after which Randazzo resigned from his position at PUCO) and FirstEnergy's essentially admitting to bribing Randazzo in the deferred-prosecution agreement. The state offered evidence that following the FBI raid, Randazzo: (1) transferred a house

---

1. Randazzo and his consulting company, Sustainability Funding Alliance of Ohio, are both appellees in this action. To keep things simple, this opinion will refer to both appellees as "Randazzo." Likewise, this opinion refers to FirstEnergy Corporation and its various subsidiaries and affiliated companies as "FirstEnergy."

valued at more than $500,000 to his son for $0; (2) sold two properties in Florida for a total of around $4 million; and (3) sold two properties in Ohio for a total of around $800,000.

{¶ 9} This pattern, the state claimed, indicated a "present danger" that Randazzo was attempting to transfer assets to make them unreachable by a judgment creditor. The trial court granted the state's motion and issued two orders of attachment: one for "property other than personal earnings" and the other for "accounts [of] property other than personal earnings." The state then obtained orders garnishing various accounts held by Randazzo.

{¶ 10} After learning of the ex parte attachment orders, Randazzo filed a motion to vacate the attachment orders and the related garnishment orders. The trial court held a hearing on the motion, but Randazzo chose not to offer any evidence. Instead, he offered legal theories as to why the attachment was improper.

{¶ 11} Specifically, Randazzo argued that attachment was improper because (1) the state filed for attachment on August 11, but the amended complaint making Randazzo a party to the state's lawsuit was not filed in the clerk's office until August 17, (2) the court had stayed the underlying lawsuit, (3) the state had failed to establish the "irreparable injury" necessary for the orders to be issued ex parte, (4) some of the property was exempt from attachment, and (5) his due process rights were violated. In addition, Randazzo argued that the garnishment orders were improper.

{¶ 12} The state responded to Randazzo's legal arguments and made new factual assertions—supported by an affidavit—that Randazzo had wired millions from his brokerage account to an out-of-state law firm. Following the hearing, the trial court denied Randazzo's motion to discharge the attachments.

### B. The Appeals Court Reverses the Orders of Attachment

{¶ 13} Randazzo appealed the attachment orders and the denial of the motion to vacate. Randazzo raised five arguments: (1) the orders of attachment

4

were improper because Randazzo was not a party to the state's lawsuit when the motion for attachment was filed, (2) the affidavit submitted by the state in support of the motion for attachment was deficient, (3) the trial court erred in concluding that the state met the "irreparable injury" requirement for an ex parte attachment, (4) the state failed to post bond as required by R.C. 2715.044, and (5) the state's requests for the "garnishments [were] supported by an affidavit incorrectly claiming the State had a judgment against" Randazzo.

{¶ 14} The appeals court rejected Randazzo's arguments regarding the commencement of the action, the state's affidavit, and the bond requirement. *See* 2022-Ohio-3400 at ¶ 17, 21, 22. But it held that the trial court erred in granting the attachment orders ex parte. *Id.* at ¶ 34. It reasoned that the state had failed to meet its statutory requirement to show that it would "suffer irreparable injury if the order is delayed until the defendant against whom the motion has been filed has been given the opportunity for a hearing," R.C. 2715.045(A). 2022-Ohio-3400 at ¶ 23-24, 30. The court did not separately analyze the trial court's denial of Randazzo's motion to vacate, other than to note that the supplemental affidavit submitted by the state at that hearing could not be considered to support the attachment orders because the affidavit was not presented at the original ex parte hearing, *id.* at ¶ 23-24, 33. It concluded that "the trial court abused its discretion in issuing the attachment orders and further erred in denying [Randazzo's] motion to vacate those orders." *Id.* at ¶ 34.

{¶ 15} The court of appeals further held that the garnishment orders should be vacated. It explained that the garnishment orders were improper because the attachment orders had been improperly issued, *id.* at ¶ 35, and, further, that the trial court had erred by approving the garnishments based on a form submitted by the state that said it had already obtained a judgment against Randazzo, *id.* at ¶ 36-37. The court of appeals then vacated the trial court's attachment and garnishment orders. *Id.* at ¶ 41.

{¶ 16} We granted the state's motion to stay the judgment of the court of appeals pending appeal. 168 Ohio St.3d 1475, 2022-Ohio-4501, 199 N.E.3d 559. And we accepted the state's discretionary appeal, in which it raised five propositions of law. *See* 168 Ohio St.3d 1526, 2023-Ohio-86, 200 N.E.3d 1147.

## II. ANALYSIS

### A. The Court of Appeals Erred in Vacating the Orders of Attachment

{¶ 17} The state's first three propositions of law challenge the court of appeals' decision to vacate the orders of attachment. Before we get to the state's legal arguments, it's helpful to survey the statutes in play.

#### 1. The prejudgment attachment statutory scheme

{¶ 18} A plaintiff may obtain an attachment order against a defendant's property prior to judgment. *See* R.C. 2715.01. To succeed on a motion for a prejudgment attachment, the plaintiff must show two things. First, the plaintiff must demonstrate "probable cause." R.C. 2715.043(B). That means that "it is likely that [the] plaintiff * * * will obtain judgment against the defendant against whom the motion was filed that entitles the plaintiff to a money judgment that can be satisfied out of the property" sought to be attached. R.C. 2715.011(A). Second, the plaintiff must show the existence of at least one out of eleven statutory bases for attachment. *See* R.C. 2715.01(A).

{¶ 19} Three statutory bases are relevant in this case: that the defendant (1) is going to convert the property into money to place it beyond the reach of creditors; (2) has or is going to dispose of the property to defraud creditors; and (3) has fraudulently or criminally incurred the obligations for which the suit has been brought. R.C. 2715.01(A)(7), (9), and (10).

{¶ 20} Generally, a defendant is given notice and an opportunity to be heard prior to an order granting prejudgment attachment. *See* R.C. 2715.04; R.C. 2715.041 (notice); R.C. 2715.043 (hearing). But a plaintiff may obtain an attachment order ex parte if he shows (1) "probable cause to support the motion"

and (2) that he "will suffer irreparable injury if the order is delayed until the defendant against whom the motion has been filed has been given the opportunity for a hearing." R.C. 2715.045(A). A court may find irreparable injury only when the plaintiff demonstrates either a "present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the court" or that "the value of the property will be impaired substantially" if the attachment order is delayed. R.C. 2715.045(B).

{¶ 21} If an ex parte attachment order is entered, the clerk must serve on the defendant a notice that the order was issued. R.C. 2715.045(C)(1). The defendant may request a hearing on the attachment by filing a request with the court. R.C. 2715.045(D). The hearing is "limited to a consideration of whether there is probable cause to support the motion and whether any of the property of the defendant is exempt from attachment." R.C. 2715.043(B). In addition, a defendant may move to discharge an attachment order at any time before judgment in the underlying action. *See* R.C. 2715.44.

{¶ 22} A party "affected by an order discharging or refusing to discharge an order of attachment" may pursue an interlocutory appeal of that order, and during the pendency of such an appeal, "the original action shall proceed to trial and judgment as though no appeal had been taken." R.C. 2715.46.

2. *The court of appeals reversed based upon an inapplicable legal standard*

{¶ 23} We begin with the state's second proposition of law because it disposes of most of the issues in this case. Within this proposition, the state asserts that the court of appeals erred by premising its decision to vacate the attachment orders on whether the trial court properly entered the orders ex parte. The state contends that "the *ex parte* decision is not subject to appeal and is not independently reviewable." In its view, "an *ex parte* attachment order can be contested via an evidentiary hearing" after the order's issuance, and "it is the order issued after the evidentiary hearing that is subject to appeal, not the result of the *ex parte* motion."

**{¶ 24}** We agree that the court of appeals erred by premising its decision on the ex parte requirements. By statute, an appeal properly lies from the denial of a motion to vacate. *See* R.C. 2715.46. There is no similar right to appeal from the trial court's initial grant of an ex parte order. There is no special statutory provision akin to R.C. 2715.46 that authorizes such an appeal. And an ex parte order of attachment does not qualify as a final order under the terms of our final-order statute, R.C. 2505.02.[2] Rather, the proper remedy for a party who is dissatisfied with an ex parte attachment order is to request a hearing on the order at which both parties may be heard. *See* R.C. 2715.045(D).

**{¶ 25}** The court of appeals premised its decision on its conclusion that the state failed to demonstrate that it would suffer an "irreparable injury" if the order was delayed so that Randazzo could have an opportunity to attend a hearing. 2022-Ohio-3400 at ¶ 31. But that requirement was no longer at issue on appeal. The irreparable injury requirement is only relevant to whether a plaintiff may obtain attachment without notifying the other side. Once the other side has had an opportunity to be heard, *see* R.C. 2715.045(D), there is no longer any effective relief that can cure a trial court's erroneous decision to grant an attachment ex parte.

**{¶ 26}** Randazzo's remedy for an allegedly improper ex parte order was to request a hearing on the order—which he did by filing a motion to vacate the attachment. The hearing was *not* to decide if the special requirements for an ex parte order were met. That ship had sailed. Rather, the hearing was "limited to a consideration of whether there [was] probable cause to support the motion [for attachment] and whether any of the property * * * [was] exempt from attachment." R.C. 2715.043(B).

---

2. An attachment order is a "provisional remedy" under the final-order statute. *See* R.C. 2505.02(A)(3). But an ex parte attachment order is not a final order that is subject to immediate appeal because it does not "determine[] the action with respect to the provisional remedy," R.C. 2505.02(B)(4)(a). Rather, the ex parte order is subject to modification through a motion to vacate. R.C. 2715.045(E).

**{¶ 27}** Randazzo had a right to appeal the trial court's denial of the motion to vacate the attachment. But he did not have a right to challenge the trial court's conclusion that irreparable injury was likely to occur unless it issued the order ex parte. Thus, the court of appeals erred in vacating the trial court's attachment order based on its conclusion that the state had failed to meet the irreparable injury requirement for an ex parte order.

*3. Randazzo has not established an alternative basis to sustain the judgment of the court of appeals*

**{¶ 28}** Generally, a party may defend a judgment based on any ground that was properly preserved below. *See State v. Bembry*, 151 Ohio St.3d 502, 2017-Ohio-8114, 90 N.E.3d 891, ¶ 11-12; *Couchot v. State Lottery Comm.*, 74 Ohio St.3d 417, 423, 659 N.E.2d 1225 (1996); *see also* App.R. 3(C)(2). Here, Randazzo seeks to defend the court of appeals' judgment on the alternative basis that the state failed to submit any admissible evidence to the trial court supporting the attachment orders. Specifically, Randazzo argues that the affidavit submitted by the state was inadmissible because it was not based on personal knowledge and that the deferred-prosecution agreement was not admissible against nonparties to that agreement.

**{¶ 29}** We need not spend much time with either argument. Neither was raised in Randazzo's motion to vacate the order of attachment. Thus, both arguments have been forfeited. *See Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997) ("we have long recognized, in civil as well as criminal cases, that failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal").

*4. Our determination that the court of appeals erred in vacating the attachment orders renders moot the state's first and third propositions of law*

**{¶ 30}** In its first proposition of law, the state argues that the court of appeals should only have reviewed the trial court's legal determinations, not its factual ones. And in its third proposition of law, the state argues that the court of

appeals erred by refusing to consider new evidence that it offered in response to Randazzo's motion to vacate the attachment orders. We find it unnecessary to resolve either proposition. Both arguments are directed at the court of appeals' determination that the state had failed to meet the irreparable injury requirement for an ex parte attachment. Our conclusion that the court of appeals erred in reversing the attachment orders renders moot these additional challenges to its holding.

**B. There has been no showing that Randazzo suffered any prejudice from the garnishment procedures**

{¶ 31} After obtaining the orders of attachment, the state sent garnishment forms to two banks and one brokerage firm where Randazzo had accounts. The garnishment orders were on a standard form used for a judgment debtor—that is, someone who has *already* obtained a judgment against a defendant. Each garnishment order stated: "THE TOTAL PROBABLE AMOUNT NOW DUE ON THIS JUDGMENT IS * * * $8,000,000.00." (Capitalization and underlining sic.)

{¶ 32} The court of appeals held that "because the attachment orders were improperly issued, it is axiomatic that the garnishment orders upon which they are based are also defective." 2022-Ohio-3400 at ¶ 35. But the appeals court continued, explaining that the state "provides no explanation for why it stated on the garnishment form that it had obtained a judgment against appellants in the amount of $8 million dollars * * * [and] "fails to adequately explain * * * why it asserted in the form's affidavit [that] it had a judgment against appellants when it clearly had obtained no such judgment." *Id.* at ¶ 38. Thus, the court of appeals held that the trial court erred in "approving and ordering the post judgment garnishments prior to the entry of a judgment against appellants." *Id.* at ¶ 39.

{¶ 33} The state's fourth and fifth propositions of law target these findings. The state contends that it appropriately used the $8 million figure, even though it sought to recover an alleged $4.3 million bribe, because R.C. 2715.01(A) authorizes attachment for all the damages that "may be had" in an action. And the

state points out that under the Ohio Corrupt Practices Act, R.C. 2923.31 et seq., Randazzo may be liable for up to treble damages for the $4.3 million bribe he allegedly received—and that comes out to $12.9 million, which is more than $8 million.

{¶ 34} The state further contends that it used the post judgment garnishment forms because "[t]he clerk did not have a garnishment form with [prejudgment] attachment language. Left with no other option, the state completed the garnishment form the clerk demanded." The state points out that this process didn't prejudice Randazzo in any way: "[Randazzo] does not claim anything different would have occurred had the garnishment orders used the word 'attachment' instead of 'judgment.' "

{¶ 35} The $8 million figure was included not only in the garnishment forms but also in the orders of attachment issued by the trial court. At no point during the trial-court proceedings did Randazzo challenge this amount. Because Randazzo did not raise the issue below, the court of appeals erred to the extent it premised its order on its conclusion that a different figure should have been used.

{¶ 36} Moreover, Randazzo has not established any prejudice by the state's use of improper forms. The state acknowledges that it didn't precisely follow the garnishment procedures for prejudgment attachments laid out in R.C. 2715.091. But it's hard to see how Randazzo suffered any resulting injury because the assets in Randazzo's accounts would have been frozen regardless. "Perhaps the most basic rule of appellate procedure is that 'in order to secure reversal of a judgment, [an appellant] must not only show some error but must also show that that error was prejudicial to him.' " (Brackets added in *Haynes*.) *State v. Haynes*, 171 Ohio St.3d 508, 2022-Ohio-4473, 218 N.E.3d 878, ¶ 38 (DeWine, J., dissenting), quoting *Smith v. Flesher*, 12 Ohio St.2d 107, 110, 233 N.E.2d 137 (1967).

{¶ 37} Because Randazzo has failed to demonstrate any prejudice from the use of improper garnishment forms, we sustain the state's challenge to that portion of the decision of the court of appeals.

### III. CONCLUSION

{¶ 38} We reverse the judgment of the Tenth District Court of Appeals, and we reinstate the orders of the trial court.

Judgment reversed

and trial-court orders reinstated.

KENNEDY, C.J., and DONNELLY, STEWART, BRUNNER, and LEWIS, JJ., concur.

FISCHER, J., concurs, with an opinion.

RONALD C. LEWIS, J., of the Second District Court of Appeals, sitting for DETERS, J.

_____

**FISCHER, J., concurring.**

{¶ 39} I generally concur in the analysis set forth in the majority opinion, and I concur in the judgment reversing the decision of the Tenth District Court of Appeals. I write separately, however, to note a concern related to the state's fifth proposition of law, which deals with the garnishment order and challenges the court of appeals' holding that the order was improper because the state failed to "follow[] the requisite proceedings for obtaining prejudgment garnishment orders" and instead used postjudgment garnishment forms and procedures, 2022-Ohio-3400, ¶ 37.

{¶ 40} The analysis of the majority opinion notes that the state has acknowledged that it did not "precisely follow" the garnishment procedures for prejudgment attachments set forth in R.C. 2715.091. Majority opinion, ¶ 36. As explained in the majority opinion, the state asserts that it followed the wrong procedures because it was effectively forced to do so by the clerk of courts. *See id.*

at ¶ 34. The majority opinion does not directly address this procedural failing, as it concludes that appellees, Samuel Randazzo and Sustainability Funding Alliance of Ohio, Inc., did not challenge the garnishment amount below and were not prejudiced by the state's use of improper forms. *Id.* at ¶ 37.

{¶ 41} While I agree with the conclusion of the majority opinion sustaining the state's challenge to the portion of the court of appeals' opinion dealing with the garnishment orders, I wish to express my concern with the state's failure to follow the correct procedures in this case. It is a fundamental principle of law that no one in the judicial branch of government—not a justice, nor a judge, nor a clerk of courts—has the authority to amend the Revised Code. *See Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 27. Unless a statute enacted by the General Assembly is found to be unconstitutional, the judiciary is bound to follow it, even if it disagrees with the policies underlying that statute or feels that complying with the statute would be onerous. *See State ex rel. O'Diam v. Greene Cty. Bd. of Commrs.*, 161 Ohio St.3d 242, 2020-Ohio-3503, 162 N.E.3d 740, ¶ 18 (explaining that "courts have to abide by constitutionally sound statutes").

{¶ 42} Bearing these principles in mind, I wish to make clear that the state must follow the correct statutory procedures in seeking garnishment and that an incorrect clerk-of-courts policy is not a valid basis for failing to do so. I can understand the dilemma facing a party to a court proceeding that is confronted with a clerk who may be asking the party to follow procedures that are not in line with the Revised Code; however, parties should remember that there are avenues available to them—such as seeking an extraordinary writ compelling a clerk to follow the law—designed to ensure that they will be able to comply with the relevant statutory procedures.

{¶ 43} I agree with the analysis set forth in the majority opinion holding that Randazzo's failure to challenge the garnishment amount at the trial-court level and his failure to establish prejudice prevent us from finding reversible error in this

case. *See* majority opinion at ¶ 35-36. While I concur in the majority opinion, I respectfully wish to also caution future litigants that their failure to follow statutory procedures could result in this court finding reversible error under different circumstances.

———————————

Dave Yost, Attorney General, Mathura J. Sridharan, Deputy Solicitor General, L. Martin Cordero and Margaret O'Shea, Assistant Attorneys General, and Charles Miller, Special Counsel, for appellant.

Roger P. Sugarman; and Allen Stovall Neuman & Ashton, L.L.P., Richard K. Stovall, Jeffrey R. Corcoran, and Tom Shafirstein, for appellees.

———————————