No. 05-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 152

_____

IN RE THE MATTER OF THE DRIVER'S
LICENSE OF RONALD DUANE KEENEY,

        Petitioner and Appellant,

  v.

DEPARTMENT OF JUSTICE,

        Respondent and Respondent.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DV-04-778
The Honorable Edward P. McLean, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Nik G. Geranios, Dye & Moe, P.L.L.P., Missoula, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Brenda Nordlund, Assistant
Attorney General, Helena, Montana

            Fred Van Valkenburg, Missoula County Attorney; Missoula, Montana

_____

Submitted on Briefs:  May 17, 2006

Decided:  July 11, 2006

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Ronald Duane Keeney (Keeney) appeals from the denial by the District Court for the Fourth Judicial District, Missoula County, of his petition to reinstate his driver's license. We affirm.

¶2 Keeney presents the following issue on appeal: Whether the Department of Justice (Department) could revoke Keeney's driver's license despite its failure to provide Keeney with the notice required by the former § 61-11-204(3), MCA (2001).

## FACTUAL BACKGROUND

¶3 Keeney had a need for speed. This need manifested itself in him wracking up 10 speeding tickets within 30 months. The Department mailed to Keeney on July 27, 2004, a "Habitual traffic offender declaration and notice of revocation/appeal rights." The notice informed Keeney that the Department's records indicated that he had accumulated 30 or more conviction points related to use or operation of a motor vehicle within a three-year period. The Department informed Keeney that state law required it to declare him a habitual traffic offender and to revoke his driver's license for a period of three years. The Department attached a certified copy of Keeney's driving record to the notice. The certified copy of Keeney's driving record reflected the fact that he had been convicted of 10 three-point speeding violations during the period of October 23, 2001, through April 21, 2004. In fact, Keeney accumulated 18 conviction points between October 23, 2001, and May 2, 2003.

¶4 Keeney contested the Department's actions and filed a petition for judicial review asking that the habitual offender designation be revoked and that the Department reinstate

2

his driver's license. Keeney first argued to the District Court that Montana law, and not Idaho law, should apply to speed limits on Idaho highways. Keeney had received at least one of his speeding tickets while driving in Idaho. The District Court summarily dismissed his claim.

¶5 Keeney also argued to the District Court that Montana law as it existed on May 2, 2003, the date on which he racked up his eighteenth conviction point within a two year period, required the Department to notify Keeney that he had accumulated 18 points within a two year period. The notice would have informed Keeney that the Department would suspend his license unless he completed a certified driver rehabilitation and improvement course. The District Court also rejected this claim. It noted that the legislature amended § 61-11-204, MCA, with an effective date of May 5, 2003, to eliminate the notification requirement. Idaho law enforcement stopped Keeney for speeding in April 2003. He forfeited bond on May 2, 2003. The State did not receive notification of Keeney's May 2, 2003, conviction from Idaho, however, until May 28, 2003. By that date, the notice statute no longer was in effect and the District Court concluded that the Department had correctly applied the law as it existed on May 5, 2003. This appeal followed.

STANDARD OF REVIEW

¶6 The denial of a petition to reinstate a driver's license presents mixed questions of fact and law. *See Widdicombe v. State ex rel. Lafond*, 2004 MT 49, ¶ 7, 320 Mont. 133, ¶ 7, 85 P.3d 1271, ¶ 7. We review a district court's findings of fact to determine whether they are clearly erroneous. *In re McKenzie*, 2001 MT 25, ¶ 5, 304 Mont. 153, ¶ 5, 19

3

P.3d 221, ¶ 5. We conduct plenary review of a district court's conclusions of law to determine whether they are correct. *City of Billings v. Gonzales*, 2006 MT 24, ¶ 6, 331 Mont. 71, ¶ 6, 128 P.3d 1014, ¶ 6.

DISCUSSION

¶7     Section 61-11-203, MCA (2001), defined the term "driver in need of rehabilitation and improvement" as "a person who within a 2-year period accumulates 18 or more conviction points according to the schedule specified in subsection (3)." Section 61-11-204, MCA (2001), further provided that the Department shall notify such habitual offender "that unless the person enrolls in and successfully completes, within 90 days of notification, a certified driver rehabilitation and improvement course" as provided by § 61-2-302, MCA, "the person's driver's license will be suspended for a period not to exceed six months or until the person has successfully completed the course, whichever occurs first." The legislature repealed this notice requirement, effective May 5, 2003, pursuant to the enactment of 2003 Mont. Laws, Ch. 556, Sec. 11, 12. *See* Compilers Comments to §§ 61-11-203, 204, MCA (2003).

¶8     Keeney argues on appeal that the Department violated his due process rights by failing to provide him notice of his status as an habitual offender as former § 61-11-204(3)(b), MCA (2001), required. He contends that the date of his Idaho conviction on May 2, 2003, before the statutory amendment took effect, controls for purposes of his point accumulation and thereby obligated the Department to provide the requisite notice. He argues that "reasonable reliance" and "fair notice" counsel against applying the legislative amendment to his license revocation. He asserts that he and other Montana

4

drivers possessed the statutory assurance that "they would know if and when they had accumulated enough conviction points to warrant modification of their driving behavior and how the accumulation of 18 conviction points would be evaluated by the department." The State counters that Keeney couches his argument in terms of due process, but actually challenges what he considers to be the retroactive application of the repealed amendment set forth in 2003 Mont. Laws, Ch. 556. We agree.

¶9 "No law contained in any of the statutes of Montana is retroactive unless expressly so declared." Section 1-2-109, MCA. For purposes of this provision, "retroactive" means "a statute which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions already past." *Allen v. Atlantic Richfield Co.*, 2005 MT 281, ¶ 16, 329 Mont. 230, ¶ 16, 124 P.3d 132, ¶ 16. A retroactive or retrospective law "gives a transaction a different legal effect from that which it had under the law when it occurred." *St. Vincent Hosp. v. Blue Cross* (1993), 261 Mont. 56, 60, 862 P.2d 6, 9.

¶10 Keeney argues that he possessed a valid Montana driver's license and once issued, he has an important interest in retaining it. As a result, he contends that his driver's license cannot be suspended or revoked without the procedural due process guaranteed by the Fourteenth Amendment. *See Dixon v. Love* (1977), 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172. Keeney's argument hinges on the assumption that he possessed a substantive right to receive the notice. We decline to recognize such a substantive right.

¶11 In *Williams v. Wellman-Power Gas, Inc.* (1977), 174 Mont. 387, 390-91, 571 P.2d 90, 92, we concluded that application of an amendment extending the statute of

5

limitations to claims not already barred at the time that the amendment took effect would not constitute retroactive application, because "[n]o vested rights are taken away or impaired." We rejected a property owner's claim that she had a vested property interest to operate a bar on her property in *Germann v. City of Whitefish*, 2006 MT 130, ¶ 33, 332 Mont. 303, ¶ 33, ___ P.3d ___, ¶ 33. The property owner premised her § 1983 claims on the fact that the City could not take her right to operate a bar on her property through a local ordinance. We dismissed the claims based on her lack of a substantive right to operate a bar when the Department of Revenue had received, but had not yet approved her application. *Germann*, ¶¶ 31, 33. We likewise rejected a claim of a protected property interest by a mining company in possession of a State mineral lease in *Seven Up Pete Venture v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, ¶ 26, 114 P.3d 1009, ¶ 26. We held that a voter-approved initiative enacted while the permit application was pending did not deprive the mining company of a protected property interest in the yet to be obtained mining permit. *Seven Up Pete*, ¶ 33. Keeney possesses no vested or substantive right to have the Department treat him as a "driver in need of rehabilitation improvement" and to receive procedural notice of his deficiency.

¶12   We have held that new legislation that affects only procedural matters and does not relate to a parties' substantive rights falls outside the ambit of § 1-2-109, MCA. *State Compensation Ins. v. Sky Country* (1989), 239 Mont. 376, 379, 780 P.2d 1135, 1137. As recognized by the District Court, the 2003 legislative repeal of the notice requirement did not affect Keeney's substantive rights "any more-so than the change in the law concerning lifetime offenses of driving under the influence of alcohol versus convictions

6

in the last five years." The legislature amended the laws pertaining to driving while intoxicated in 1995 to create a felony sanction for fourth or subsequent offense DUI. *See* § 61-8-714(4), MCA (1995). The amendment making a fourth or subsequent DUI a felony offense became effective on October 1, 1995.

¶13 We first addressed the legislative changes to the DUI statutes and their potential retroactive application in *State v. Brander* (1996), 280 Mont. 148, 930 P.2d 31. We held that the application of the 1995 amendments did not constitute a retroactive application of the law to earlier convictions that occurred before the amendments took effect. *Brander*, 280 Mont. at 154-55, 930 P.2d at 35. We reaffirmed that decision in *State v. Pratt* (1997), 286 Mont. 156, 951 P.2d 37. We noted in *Pratt* that the legislature enacted the felony DUI statute to punish repetitive behavior more severely rather than to punish defendants for prior convictions. *Pratt*, 286 Mont. at 170, 951 P.2d at 45.

¶14 Similar logic applies here. The Department did not change the method by which it calculated the points for Keeney's speeding infractions that occurred before the effect of the legislative amendment. The Department did not punish Keeney for speeding or traffic violations that occurred before the legislative repeal. Instead the Department properly considered these previous violations as points against his driving record when he finally accumulated 30 points for driving offenses.

¶15 The Dissent cites no authority for the proposition that Keeney's possession of a driver's license amounted to a substantive right to a particular process. As noted by the Court in *State ex rel. Majerus v. Carter* (1984), 214 Mont. 272, 276, 693 P.2d 501, 504, in a driver's license revocation proceeding "[t]he question is how much process is due.

7

The answer is not as much as in a criminal case." It is important to remember that the Department did not revoke Keeney's license when he wracked up the eighteen points in a two-year period. The Department did not act until Keeney earned four additional speeding tickets in the next year. Once Keeney reached the thirty-point plateau in a three-year period, the Department sent Keeney a notice of revocation. Similar to *Carter*, the statutory scheme then afforded Keeney judicial review of the Department's revocation. Procedural due process requires nothing more in this instance as Keeney "need not be advised of his continuing duty to act as a law-abiding citizen." *Carter*, 214 Mont. at 279, 693 P.2d at 505.

¶16    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

Justice Patricia O. Cotter dissents.

¶17    I dissent. Because the suspension of a driver's license involves state action that adjudicates important interests of the licensee—including his interest in the pursuit of a livelihood—procedural due process as required by the Fourteenth Amendment must be extended. *State ex rel. Majerus v. Carter* (1984), 214 Mont. 272, 276, 693 P.2d 501, 503.

8

Procedural due process includes at a minimum the application of the law in effect at the time of the proscribed conduct in question. Here, under the law in effect at the time Keeney accumulated eighteen points, the State was required to give him notice that he was declared a "driver in need of rehabilitation and improvement," and that he must either enroll in a rehabilitation and improvement course or face suspension of his driving privileges. The State failed to comply with this law, and as a result, Keeney was later deprived of his license without forewarning or opportunity to cure.

¶18 The Court errs in its analysis in two respects. First, it is undisputed that Keeney exceeded the eighteen-point threshold on May 2, 2003, that the law then in effect required that notice be given, and that the amendment to the statute removing the notice provisions did not take effect until May 5, 2003. The Court however appears to reject Keeney's argument that he was entitled to rely on the law in effect at the time he accumulated these points, concluding that because the revised law did not affect Keeney's "substantive rights," its application to Keeney is not problematic. The trouble is that the inference does not follow.

¶19 As the Court points out at ¶ 9, § 1-2-109, MCA, provides that no statute is retroactive unless expressly so declared. Section 61-11-204, MCA, as amended in May 2003, did not expressly so declare; therefore, the statute may not be applied retroactively. But, contrary to the Court's conclusion at ¶ 8, retroactive application of the 2003 law is not the issue. The question is whether Keeney should have been able to rely upon the provisions of the law in effect on the date that he accumulated the eighteen points. In an apparent effort to dodge this question, the Court notes that while Keeney's determinative

conviction occurred on May 2, 2003, the State did not receive notice of the conviction until May 28, 2003, <u>after</u> the notice statute had been amended. The date of receipt of notice is, however, immaterial, as the Department's own witness testified at the judicial review hearing that it is the date of conviction that the Department considers determinative in implementing the statute, and not the date of receipt.

¶20 This brings me to my second disagreement with the Court's Opinion. In deciding that Keeney had no right to rely on the law then in effect, the Court attempts to draw a distinction between the right to retain one's license, a right which the Court seems to concede is substantive, and the right to receive notice that one's license is in jeopardy, which the Court concludes is not a substantive right. ¶ 10. However, in each of the three cases cited by the Court in support of this proposition—*Williams v. Wellman-Power Gas, Inc., Germann v. Stephens,* and *Seven Up Pete Venture v. State*—the appellant had no vested interest that would be impaired by virtue of a change in the law. In *Williams,* a statute of limitations for filing a workers' compensation claim was extended by the legislature, an act of grace which neither impaired vested rights nor imposed new duties or disabilities. *Williams*, 174 Mont. at 391, 571 P.2d at 92-93. In both *Germann* and *Seven Up Pete*, the aggrieved party was in the stages of permit or license *application* when the ordinance and initiative at issue, respectively, took effect. Thus, in these cases, procedural due process was not implicated because there were no vested rights in existence (*i.e*., no license) at the time the new law went into effect. Here, clearly, such is not the case.

10

¶21    Contrary to the conclusion reached by the Court at ¶ 12, the repeal of the notice requirement *did* affect Keeney's substantive rights.  Until the law was repealed, Keeney had a right to presume the law then in effect with respect to his license would be enforced, and that he would receive notice and an opportunity to protect his license before the State could suspend it.  In my judgment, Keeney was denied the due process of the law to which he was entitled when his license was suspended without warning, and without adherence to the law in effect at the time he accumulated the eighteen points.  I dissent from our refusal to so conclude.

/S/ PATRICIA COTTER

Justice James C. Nelson joins in the dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON

Justice Jim Rice joins in the dissent of Justice Patricia O. Cotter.

/S/ JIM RICE